TAYLOR, C.J.
The issue in this case is whether MCL 333.7405(l)(d), which, among other things, forbids a person from knowingly “keeping] or maintain[ing]” a vehicle that is used for keeping or selling controlled substances, requires for a conviction that the prosecutor show, as was stated in People v Griffin, 235 Mich App 27, 32; 597 NW2d 176 (1999), that the defendant’s actions occurred “continuously for an appreciable period.”
We reject the Griffin Court’s construction of the statute and hold that while the statute precludes a conviction for an isolated incident without other evidence of continuity, the statute does not require the prosecution to show that a defendant’s actions occurred “continuously for an appreciable period.” Because the Court of Appeals reversed defendant’s conviction for maintaining a drug vehicle on the basis of the Griffin Court’s construction of the statute, we vacate the judgment of the Court of Appeals and remand this case for reconsideration in light of the test we adopt today.
I. FACTS AND PROCEEDINGS BELOW
Acting on a tip that defendant, who had the nickname of “Doughboy,” was going to deliver some drugs at a parking lot of a restaurant, several law enforcement officers went to that location. A white van fitting the description of the vehicle “Doughboy” was expected to be driving entered and parked. A woman who appeared to have been waiting for the white van got out of a nearby red sedan and got into the van through its rear passenger door. A few minutes later she stepped out of the van, got back into the sedan, and started to back up *149 the sedan in order to drive away. After the police stopped the sedan, they found four rocks of crack cocaine on the floorboard of the driver’s side of the sedan, and a crack pipe and lighter were found on the floor near the backseat. A passenger hiding in the back of the sedan was found to be in possession of a small amount of marijuana.
As one of the officers approached the white van, defendant started getting out of the van with a cell phone in his hand and he turned toward the van so that the officer could not see his hands.[1] Another officer observed a man in the passenger seat of the van remove a piece of plastic from his mouth and toss it to the floor. This man was later taken to the hospital when, with increasingly slurred speech, he told an officer that he had swallowed some cocaine. While no drugs were found in the van or on the defendant, a $50 bill was found on the console of the van as well as an empty and ripped plastic bag that had been twisted in a manner typical of drug packaging. As for the woman who had entered the van, a detective testified that defendant said that the woman had owed him money and had paid him the $50 she owed him, and that he had then given her a $20 rock of crack cocaine.[2]
*150 After a jury trial, defendant was convicted of delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(iv), and maintaining a drug vehicle, MCL 333.7405(l)(d).[3]
The Court of Appeals affirmed the cocaine delivery conviction but reversed the conviction of maintaining a drug vehicle for the reason that there was insufficient evidence to support the conviction.[4]
[5]The Court of Appeals, relying on Griffin, summarized its holding as follows:
The prosecution did not present evidence that defendant exercised authority or control over the white van for an appreciable period of time for the purposes of making the van available for selling or keeping drugs. The prosecution only presented evidence that defendant used the van for selling or keeping drugs on the night of April 9, 2003. Because defendant’s conviction is not supported by sufficient evidence, we reverse defendant’s conviction for maintaining a drug vehicle.[5]
The prosecutor filed an application for leave to appeal regarding the reversal of the conviction for maintaining a drug vehicle, and defendant filed an application for leave to file a cross-appeal regarding the affirmance of his delivery conviction. We granted the *151 prosecutor’s application for leave to appeal, but denied defendant’s cross-application.[6]
We limited the grant of leave to appeal to the issues whether a defendant must “keep or maintain” a vehicle used for the purpose of selling a controlled substance “continuously for an appreciable period of time” as required by Griffin, supra at 32-33, in order to sustain a conviction under MCL 333.7405(l)(d) and whether the evidence presented in this case was sufficient to sustain the defendant’s conviction for keeping or maintaining a drug vehicle.
II. STANDARD OF REVIEW
Whether MCL 333.7405(l)(d) requires the prosecutor to show that a defendant’s actions occurred “continuously for an appreciable period” is a legal question, and we review legal questions de novo. People v Morey, 461 Mich 325, 329-330; 603 NW2d 250 (1999). Our fundamental obligation when interpreting statutes is “to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute.” Koontz v Ameritech Services, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002). Pursuant to MCL 8.3a, undefined statutory terms are to be given their plain and ordinary meaning, unless the undefined word or phrase is a term of art.[7] We consult a lay dictionary when defining common words or phrases that lack a unique legal *152 meaning. Robinson v Detroit, 462 Mich 439, 456; 613 NW2d 307 (2000). This is because the common and approved usage of a nonlegal term is most likely to be found in a standard dictionary, not in a legal dictionary. Horace v City of Pontiac, 456 Mich 744, 756; 575 NW2d 762 (1998).
III. ANALYSIS OF THE STATUTE
We have not previously had the occasion to construe MCL 333.7405(l)(d). The Court of Appeals, however, has issued two published opinions addressing it in the context of a charge of maintaining a drug house. First, in People v Bartlett, 231 Mich App 139, 147; 585 NW2d 341 (1998), the panel, citing Wahrer v State, 901 P2d 442, 444 (Alas App, 1995), explained, “Alas Stat 11.71.040(a)(5), which mirrors MCL 333.7405(d); MSA 14.15(7405) (d), requires proof that the defendant knew that the premises were being used for continuing illegal drug activity. . . .” The Court rejected the defendant’s claim that the jury instructions were erroneous when the trial court refused to tell the jury that “keep or maintain” required “general supervisory control” rather than merely control or “general control.” Second, in Griffin, supra, another panel, without reference to Bartlett, considered a defendant’s claim that the prosecution failed to present evidence sufficient to support his conviction of maintaining a drug house. The defendant did not contest the fact that the house at issue was a drug house; he only challenged whether there was evidence that he had kept or maintained it. The Court of Appeals determined that the prosecution had presented sufficient evidence. In its opinion the panel stated:
We hold that to “keep or maintain” a drug house it is not necessary to own or reside at one, but simply to exercise *153 authority or control over the property for purposes of making it available for keeping or selling proscribed drugs and to do so continuously for an appreciable period. [Griffin, supra at 32 (emphasis added).]
With this in mind, we turn to an analysis of the proper meaning of this phrase.
MCL 333.7405(l)(d) provides, as relevant here, that a person “[s]hall not knowingly keep or maintain a. .. vehicle ... that is used for keeping or selling controlled substances in violation of this article.” To determine the proper meaning of “keep or maintain” we first examine the statute itself. As with most statutory phrases, neither the individual word “keep” or “maintain” nor the phrase “keep or maintain” is defined in the statute.
Random House Webster’s College Dictionary (1991) defines “keep” as “to maintain ..., to cause to continue in a given position, state, course, or action.” (Emphasis added.) It defines “maintain” as “to keep in existence or continuance.” Id. (emphasis added).[8] “Keep” is defined as “to maintain” and “maintain” is defined as “to keep.” Thus, it appears that the terms “keep” and “maintain” are synonyms. The dissent contends that these two terms must be given distinct meanings because they are separated by the word “or.” We respectfully disagree. The word “keep” is commonly understood to mean “maintain” and the word “maintain” is commonly understood to mean “keep.” We cannot define these terms in a manner that is inconsistent with how they are commonly understood just because they *154 are separated by the word “or.” In other words, the fact that these two terms are separated by the word “or” does not give us the authority to give these two terms distinct meanings when they are commonly understood to have the same meaning. If two words have the same meaning, then we must give them the same meaning even where they are separated by the word “or.”
As discussed above, “keep” is defined as “to cause to continue” and “maintain” is defined as “to keep in existence or continuance.” Id. (emphasis added). The words “keep” and “maintain” both contain an element of “continuity.” Even the dissent’s definitions of these terms contain an element of “continuity.” The dissent defines “maintain” as “ ‘to keep in an existing state.’ ” Post at 163, quoting Webster’s Ninth New Collegiate Dictionary (1987). Keeping something in an existing state necessarily requires some degree of continuity. The dissent defines “keep” as “ ‘to retain in one’s possession ....’” Post at 164, quoting Webster’s Ninth New Collegiate Dictionary (1987). “Retain” is defined as “to continue to use.” Random House Webster’s College Dictionary (1991) (emphasis added). Accordingly, some degree of “continuity” is an element even under the dissent’s definition of “keep or maintain.” Therefore, even assuming that the words “keep” and “maintain” have distinct meanings because they are separated by the word “or,” the words “keep” and “maintain” both contain an element of continuity. That is, regardless of how one defines the words “keep” and “maintain,” one cannot avoid a definition that requires some degree of continuity.
Finding that evidence of continuity is required to convict a person of “keeping or maintaining” a drug vehicle is consistent with this Court’s decision in People v Gastro, 75 Mich 127; 42 NW 937 (1889). In Gastro, *155 supra at 133-134, this Court held that “[a] single act of lewdness or prostitution would not constitute the offense [of keeping and maintaining a house of ill fame] which the statute prohibits and punishes----” Just as one does not keep and maintain a house of ill fame by engaging in an isolated act of lewdness or prostitution in the house, one does not keep or maintain a drug vehicle by engaging in an isolated act of selling drugs out of the vehicle.
The phrase “keep or maintain” implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence, such as perhaps a secret compartment or the like, that conduces to the same conclusion.
We note that the Legislature has twice indicated[9] that it desires MCL 333.7405(l)(d) to be interpreted in the same way similar acts in other states have been interpreted.
In states with statutes substantially similar to MCL 333.7405(l)(d) there is remarkable uniformity in giving *156 meaning to “keep or maintain.”[10] One of the most encyclopedic discussions of the cases is found in Dawson v State, 894 P2d 672, 674 (Alas App, 1995), where the Alaska Court of Appeals, after canvassing the other states, concluded that in virtually all other states the requirement to “keep or maintain” requires “ ‘some degree of continuity’ ” id. at 676 (citation omitted), and, fleshing that out, concluded that “courts have uniformly adopted the position that the prosecution is required to prove, and the jury to find, ‘something more than a single, isolated instance of the proscribed activity.’ ” Id., quoting Barnes v State, 255 Ga 396, 402; 339 SE2d 229 (1986). The Alaska court then summarized the prevailing law with respect to the keeping or maintaining element of drug-house statutes as follows:
The state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but such use must be a substantial purpose of the users of the property, and the use must be continuous to some degree; incidental use of the property for keeping or distributing drugs or a single, isolated occurrence of drug-related activity will not suffice. The purpose [for] which a person uses property and whether such use is continuous are issues of fact to be decided on the totality of the evidence of each case; the state is not required to prove more than a single specific incident involving the keeping or distribution of drugs if other evidence of continuity exists. [Dawson, supra at 678-679.]
*157 We find this interpretation persuasive and consistent with the interpretation that we have adopted after analyzing the words of the statute.[11]
With regard to the Court of Appeals Griffin test, which held that MCL 333.7405(l)(d) requires a showing that the defendant’s actions occurred “continuously for an appreciable period,” we believe it likely that the panel was attempting to draw from Dawson but mistakenly utilized only one part of the Dawson formulation, i.e., that the defendant’s actions “must be continuous to some degree.” Dawson, supra at 678-679. The difficulty with this truncated Griffin definition is that it unwarrantedly establishes a higher burden of proof than is justified by the statutory language. While the Dawson court’s formulation, “continuous to some degree,” would be satisfied by a showing of intermittent use, the Griffin Court’s language, “continuously for an appreciable period,” seems to suggest a longer period of use with few or no interruptions. Having said that, we reiterate that “keep or maintain” is not synonymous with “use.” Hence, if the evidence only shows that defendant used a vehicle to keep or deliver drugs on one occasion, and there is no other evidence of continuity, *158 the evidence is insufficient to establish that defendant kept or maintained a drug vehicle in violation of MCL 333.7405(l)(d).
Having clarified the correct construction of MCL 333.7405(l)(d), and because the Court of Appeals analyzed defendant’s claim regarding the evidence that he kept or maintained a drug vehicle under language we have rejected today, we find it appropriate to have the Court of Appeals determine in the first instance whether the evidence supporting defendant’s conviction of maintaining a drug vehicle was sufficient in light of the interpretation of the statute set forth in our opinion today. The parties shall be allowed to file supplemental briefs.
IV RESPONSE TO THE DISSENT
Justice CORRIGAN’S partial dissent accuses us of giving offenders a free pass to use a vehicle to keep or sell drugs. We, of course, have done no such thing. Rather, we have simply determined, on the basis of the words of the statute and consistently with the overwhelming majority of other courts that have construed similar statutes, that the Legislature did not intend a conviction for knowingly keeping or maintaining a drug vehicle to obtain if there was only evidence of a single use. Defendants who possess or deliver controlled substances are already subject to felony prosecution for possession or delivery independent of evidence of a vehicle’s use. There is no free pass.
IV CONCLUSION
For the reasons set forth in this opinion, we vacate the judgment of the Court of Appeals and remand the *159 case to the Court of Appeals for reconsideration of defendant’s sufficiency of the evidence argument in light of this opinion.
Cavanagh, Weaver, and Markman, JJ., concurred with Taylor, C. J.
KELLY, J. I concur in the result only.

 The prosecutor argued in his closing argument that defendant likely had cocaine in his possession or on the driver’s seat and that he threw the drugs to the passenger and told him to get rid of them.

 Neither the passenger in the van, the woman in the sedan, nor the man in the back of the sedan testified at trial. Defendant, however, did testify. He admitted that his nickname was “Doughboy” but he denied selling any cocaine or making the statement the detective attributed to him. Although one officer indicated that the white van was the vehicle Doughboy usually drove, and defendant acknowledged driving the van, there was no evidence that defendant owned or leased the van.

 MCL 333.7405(l)(d) provides that a person
[s]hall not knowingly keep or maintain a store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances, or that is used for keeping or selling controlled substances in violation of this article.

 Unpublished opinion per curiam, issued February 23, 2006 (Docket No. 258336).

 Id. at 2 (emphasis added).

 475 Mich 907 (2006).

 MCL 8.3a provides:
All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall he construed and understood according to such peculiar and appropriate meaning.

 We note that the definitions found in Black’s Law Dictionary are consistent with the definitions found in Random House Webster’s College Dictionary. Black’s Law Dictionary (6th ed) defines “keep” as “[t]o maintain continuously,” and it defines “maintain” as “keep in existence or continuance.”

 First, MCL 333.7405(l)(d) was drawn from § 402(a)(5) of the Uniform Controlled Substances Act of 1970. 9 ULA, part TV § 402(a)(g), p 682, MCL 333.7121(2) is applicable to the statute at issue and states: “This article shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this article among those states which enact laws similar to it.”
Further, MCL 333.7405(l)(d) is part of the Public Health Code and § 1111(1) of this code provides: “This code is intended to be consistent with applicable federal and state law and shall be construed, when necessary, to achieve that consistency.” MCL 333.1111(1).
The interpretation that we adopt today is dependent on the language of the statute. We do not interpret MCL 333.7121(2) and MCL 333.7405(l)(d) as admonitions that we follow constructions placed on similar statutes in other jurisdictions if those rulings are inconsistent with the words used in our statutes.

 See, generally, anno: Validity, construction, and application of state or local law prohibiting maintenance of vehicle for purpose of keeping or selling controlled substances, 31 ALR5th 760 (1995); anno: Validity and construction of state statutes criminalizing the act of permitting real property to be used in connection with illegal drug activities, 24 ALR5th 428 (1994).

 The prosecutor concedes that only one state, Delaware, has adopted a test that would allow a conviction upon proof of a single incident without more. Priest v State, 879 A2d 575 (Del, 2005). The Delaware court acknowledged that “most, if not all” other states with similar statutes reject the single-occurrence approach. Id. at 580 n 22. The Delaware court’s approach is not persuasive because its decision was driven by policy and did not trace the words of the statute. Thus, as we have explained, we reject the Delaware construction and abide by the overwhelming majority view that proof of a single incident, without some other evidence of continuity, is not enough to establish a violation of MCL 333.7405(l)(d). We would not, as would Justice Corrigan, have Michigan join the Delaware interpretation because we find the majority view accurately interprets our similarly worded statute.