# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

SCOTT REED BLAISDELL,

       Defendant-Appellant.

UNPUBLISHED
February 5, 2015

No. 316835
Cass Circuit Court
LC No. 12-010105-FH

Before: BOONSTRA, P.J., and DONOFRIO and GLEICHER, JJ.

BOONSTRA, P.J. (*concurring*).

I fully concur in the majority opinion. I respectfully write separately merely to point out where I believe my dissenting-in-part colleague has gone astray—inconsistently with the statutory text—in construing the crime of maintaining a drug house, MCL 333.7405(1)(d), and also to call upon our Legislature or Supreme Court to lend clarity to the elements of that offense.

In construing MCL 333.7405(1)(d), the partial dissent in my view ignores the admonition that "[w]e must apply the plain, unambiguous language of a statute as written and may only engage interpretive tools when the statutory language is equally susceptible to more than one meaning." *People v Smith-Anthony*, 296 Mich App 413, 416; 821 NW2d 172 (2012); see also *People v Valentin*, 457 Mich 1, 5-6; 577 NW2d 73 (1998); *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997) Instead, the partial dissent would apply non-Michigan case law and dicta from our Supreme Court's decision in *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007), to (1) engraft onto the statute a "substantial purpose" element; and (2) create a "personal use" exemption. Because neither the statutory language[1] nor the holding of *Thompson* supports the judicial "enactment" of statutory elements or exemptions, and because I believe that the jury's verdict is supported by the language employed by the Legislature in articulating the statutory elements and by the holding of *Thompson*, I join with the majority in affirming defendant's conviction under MCL 333.7405(1)(d).

---

[1] It is, of course, the province of the Legislature, rather the courts, to define crimes and their constituent elements. See *People v Mire*, 173 Mich 357, 362; 138 NW 1066 (1912).

The partial dissent's proposed adoption of a "substantial purpose" element and a "personal use" exemption is perhaps explainable by the fact that courts often must apply precedent in new and different factual settings. In doing so, dicta from a prior case can, whether intentionally or not, be construed as if it were part of a precedential holding. Further, statutory interpretation can become complicated when, having employed specific language in describing the statutory elements of a crime, the Legislature also indicates a desire that the statute it has adopted be interpreted in the same way that similar acts in other states have been interpreted, thus potentially subjecting its own statutory pronouncements to judicial modification by non-Michigan courts interpreting non-Michigan statutes. The result may be that the law over time becomes expressed rather differently than it was expressed in the statutory language originally enacted by the Legislature.

The arguments advanced by the partial dissent in this case, and the necessity of addressing them in extended fashion in this concurrence, suggest to me that the law is in danger of suffering (and to some extent may already have suffered) this fate with respect to MCL 333.7405(1)(d), and that the statute cries out for clarification by our Legislature or Supreme Court. Given the progression of the law in the courts, perhaps it is time for the Legislature to evaluate whether that progression is consistent with the Legislature's intent and what the elements of the crime of maintaining a drug house are or should be under Michigan law, and to state them with clarity. In the meantime, I am inclined, regardless of whatever my own personal policy preferences might be, to defer to the existing expressions of the Legislature on such a policy question and to follow the admonition that we "must apply the plain, unambiguous language of a statute as written." *Smith-Anthony*, 296 Mich App at 416.

I therefore join the majority in affirming defendant's conviction under MCL 333.7405(1)(d), and will endeavor to articulate the basis for my statutory interpretation more fully in this opinion. And, in order to address any tendency by the courts to stray into the realm of judicial policy-making, due perhaps to insufficient clarity in the existing statutory language or caselaw, I call upon the Legislature or our Supreme Court to state with clarity and specificity what the law is with regard to the statutory elements of the crime of maintaining a drug house, MCL 333.7405(1)(d).

As the majority correctly notes, defendant argues that defendant's conviction cannot stand because there was no evidence that he sold drugs from his residence, used the building for the primary purpose of manufacturing drugs, or invited visitors for the purpose of using drugs together. What defendant and the partial dissent fail to appreciate, however, is that MCL 333.7405(1)(d), as crafted by our Legislature, does not require that there be any such evidence.

Rather, MCL 333.7405(1)(d) provides that a person:

[s]hall not knowingly keep or maintain a . . . dwelling, building . . . or other structure or place, that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances, *or that is used for keeping or selling controlled substances in violation of this article*. [Emphasis added].

The majority and the partial dissent agree, and the italicized language above confirms, that the plain language of MCL 333.7405(1)(d) establishes two *alternative* means by which one may unlawfully keep or maintain a drug house: (1) "keep or maintain" a house "that is frequented by persons using controlled substances . . . for the purpose of using controlled substances," or (2) "keep or maintain" a house "that is used for keeping or selling controlled substances." The first alternative is not implicated in this case; the second alternative is.

In my view, however, the partial dissent initially errs by conflating the two statutory alternatives. While both alternatives require that the defendant "keep or maintain" the house, only the first alternative contains the element that the house be "frequented by persons using controlled substances . . . for the purpose of using controlled substances." The second alternative, which is what is at issue in this case, does not contain that element, but merely requires that the house "is used for keeping or selling controlled substances."[2]

The partial dissent then compounds its initial error by additionally finding within the statute a "substantial purpose" element that it engrafts onto both of the statutory alternatives, in express contravention of the language of the statute itself. In other words, the partial dissent latches onto the here-inapplicable first alternative, seizes upon its requirement that persons frequenting a house do so for the "purpose" of using controlled substances, and then morphs that requirement into a non-legislated requirement, under the second alternative, that focuses on the "purpose" for which the owner of the house uses it and whether the use of controlled substances is a "substantial purpose" of the owner in "keep[ing] or maintain[ing]" the house. In doing so, the partial dissent in essence focuses on whether there was evidence that anyone frequented the house to use or procure controlled substances (which is irrelevant), or that defendant shared the substances with others (also irrelevant). And it uses those errors in focus to create a new statutory requirement that defendant's "substantial purpose" in "keep[ing] or maintain[ing]" his house be the non-personal use of controlled substances. Those elements simply do not exist in the statutory language. All that need be proven, under the statute, is that defendant "keep or maintain" the house and that the house be "used for keeping" (or selling) controlled substances.

In fairness to the partial dissent, it does not reach its conclusions out of thin air. In fact, I note that the partial dissent in this case is not the first unpublished decision of this Court to seemingly recognize a "substantial purpose" component of the statute (although I have been unable to locate any that have recognized a "personal use" exemption). Rather, the partial dissent bases its conclusions on *Thompson* and its quotation of language employed in an Alaska Court of Appeals case, *Dawson v State*, 894 P2d 672, 678-679 (Alaska App, 1995), in surveying the law of other states. However, our Supreme Court in *Thompson* did not, as the partial dissent suggests, hold that the use of controlled substances must be a "substantial purpose" of "keep[ing]

---

[2] In other words, the statutory language only requires a "purpose" under the first alternative, and the "purpose" referenced in the statute is not the owner's purpose in keeping or maintaining the house, but rather the purpose of those persons who frequent the house to use controlled substances there.

or maintain[ing]" a house (or, in that case, a vehicle). Nor did it hold that "personal use" was exempted from the statute. The "substantial purpose" of the vehicle, and whether the controlled substances were for "personal use," were simply not at issue in *Thompson*.

The issue addressed in *Thompson* was a simple one: What is the meaning of the statutory phrase "keep or maintain" in the context of a vehicle that was used by the defendant to deliver drugs at a restaurant parking lot? Finding that the phrase "keep or maintain" (and indeed each of those words) contained an element of continuity, the Court described the proper meaning of the phrase as follows: "The phrase 'keep or maintain' implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence, such as perhaps a secret compartment or the like, that conduces to the same conclusion." *Thompson*, 477 Mich at 155.

In so describing the element of continuity contained in the phrase "keep or maintain," the Court found that " 'keep or maintain' is not synonymous with 'use.' " *Id*. at 157. Rather, "if the evidence only shows that defendant used a vehicle to keep or deliver drugs on one occasion, and there is no other evidence of continuity, the evidence is insufficient to establish that defendant kept or maintained a drug vehicle in violation of MCL 333.7405(1)(d)." *Id*. at 157-158.

However, in vacating this Court's reversal of the defendant's conviction, the Supreme Court in *Thompson* also rejected this Court's application of the *Griffin* test[3], under which the continuity element of the phrase "keep or maintain" was deemed to be satisfied if the defendant's actions occurred "continuously for an appreciable period." *Id*., 477 Mich at 157. Our Supreme Court determined that the *Griffin* test "unwarrantedly establishes a higher burden of proof than is justified by the statutory language," in that " 'continuously for an appreciable period' seems to suggest a longer period of use with few or no interruptions." *Id*.[4]

*Thompson* thus establishes that MCL 333.7405(1)(d) is not implicated unless there is evidence of controlled substance use beyond merely a single incident of use. The partial dissent does not posit, however, that the evidence in this case was so limited. Rather, the partial dissent opines that in its view the evidence was for "personal use," and cursorily concludes that the evidence therefore does not support that defendant used the house "for keeping or selling" a controlled substance.

---

[3] *People v Griffin*, 235 Mich App 27; 597 NW2d 176 (1999).

[4] The partial dissent characterizes *Thompson* as having concluded that this Court in *Griffin* had "improperly engrafted a requirement onto the drug house statute." What our Supreme Court in *Thompson* actually concluded was that the Court in *Griffin*, in interpreting the continuity element as requiring that actions have occurred "continuously for an appreciable period," had improperly interpreted the language of *Dawson* to establish a burden of proof higher than was warranted by the statutory language, thus making it more difficult to obtain a conviction under the drug house statute than our Legislature intended. The partial dissent similarly errs in seeking to employ the language of *Thompson* and *Dawson* to engraft onto the statute a "substantial purpose" element and a "personal use" exemption.

-4-

As noted, I have been unable to locate any decisions of this Court or our Supreme Court that recognize a "personal use" exemption. The closest that I can find is *People v LaForest*, unpublished opinion per curiam of the Court of Appeals, decided May 25, 2010 (Docket No. 291553), unpub op at 3, which noted *Thompson's* quotation of the "incidental use" language from *Dawson*. However, in vacating the defendant's conviction of the crime of maintaining a drug house, the Court did not endorse a "personal use" exemption, but instead relied on the prosecution's failure in that case to specifically identify the evidence that supported a conviction. *Id*. By contrast, there are a number of unpublished decisions of this Court that have rejected arguments seeking application of an exemption for "personal use." Among them are *People v Kacienda*, unpublished opinion per curiam of the Court of Appeals, decided September 20, 2005 (Docket No. 254550), unpub op at 1 and n 2 (noting that defendant's assertion that "the law does not encompass a situation where two people live together and occasionally share drugs between themselves or with a guest . . . contradicts the plain language of the statute, which states that it is illegal to knowingly maintain a dwelling that is used for keeping controlled substances."), *People v Fisher*, unpublished opinion per curiam of the Court of Appeals, decided February 1, 2007 (Docket No. 262291), unpub op at 2 (holding that the defendant's argument, which "implies that MCL 333.7405 requires a finding that the dwelling was used by others to either buy or use drugs" relied upon a requirement that "is not contained in the plain language of the statute . . . ."), *People v Jackson*, unpublished opinion per curiam of the Court of Appeals, decided December 21, 2004 (Docket No. 250397), unpub op at 4 ("Defendant's implicit argument is that the house must be used for selling controlled substances to qualify as a drug house. But the statue clearly provides that the mere keeping of controlled substances in a dwelling is forbidden."). Unpublished opinions of this Court, while not precedentially binding, may be persuasive. MCR 7.215(J)(1).

Apart from the merits of the partial dissent's assessment of the evidence (which I will discuss below), however, the statutory language simply does not absolve a defendant where the use of the drugs was "personal," but instead requires merely that the use occur in conjunction with "keep[ing] or maintain[ing]" the house.[5] As clarified in *Thompson*, a single use is

---

[5] In opining that a defendant does not violate MCL 333.7405(1)(d) where he "simply manufactures or keeps a small amount of narcotics for personal use," the partial dissent finds "instructive" the decision of the United States Court of Appeals for the Sixth Circuit in *United States v Johnson*, 737 F3d 444, 449 (CA 6, 2009). In my view, however, the partial dissent's reliance on *Johnson* is misplaced. *Johnson* interpreted a federal sentencing enhancement statute that, unlike MCL 333.7405(1)(d), expressly required that a premises have been "maintained for the purpose of manufacturing or distributing a controlled substance," *Johnson*, 737 F.3d at 446; USSG § 2D1.1(b)(12). Personal use clearly is not implicated by that statutory language. Reliance on *Johnson's* passing reference (in dicta) to 21 USC § 856 is similarly misplaced; that federal statute expressly proscribes "maintain[ing a] place . . . *for the purpose* of manufacturing, distributing, or using any controlled substance." *Id*. (emphasis added). MCL 333.7405(1)(d) contains no such language.

-5-

insufficient; however, use that satisfies the continuity requirement, as described in *Thompson*, is sufficient under the statute, even if that use is "personal."[6]

This brings me to the partial dissent's reliance on *Thompson*'s citation to the Alaska Court of Appeals decision in *Dawson*. *Thompson* indeed described *Dawson* as reflecting "[o]ne of the most encyclopedic discussions of the cases" in other states with similar statutes. *Thompson* then characterized *Dawson* as having concluded that

> in virtually all other states the requirement to "keep or maintain" requires "some degree of continuity" and, fleshing that out, concluded that "courts have uniformly adopted the position that the prosecution is required to prove, and the jury to find, 'something more than a single, isolated instance of the proscribed activity.' " [*Thompson*, 477 Mich at 156 (internal citation and quotation marks omitted)].

The Supreme Court in *Thompson* thus found additional support for its textual conclusion (that "keep or maintain," as used in MCL 333.7405(1)(d), requires a "degree of continuity" beyond "an isolated act") in *Dawson*'s recitation of other states' courts' interpretation of similar statutes. In my view, however, that does not mean that our Supreme Court in *Thompson* further adopted as binding Michigan precedent other aspects of those other courts' interpretations of similar statutes on subjects that were not before the Court in *Thompson*. To conclude otherwise, as I believe the partial dissent does, would lead us down the slippery slope, as discussed at this outset of this opinion, of converting dicta into precedent and of subjecting the contours of Michigan's legislative enactments to judicial adjustment by non-Michigan jurists.[7]

The partial dissent's position ultimately comes down to reliance on *Thompson*'s inclusion of a lengthy block quotation from *Dawson*, stating as follows:

> The Alaska court then summarized the prevailing law with respect to the keeping or maintaining element of drug-house statutes as follows:

---

[6] The partial dissent suggests that we must adopt a "personal use" exemption in order to preclude prosecution from occurring whenever "anyone [is] found at home with a single marijuana cigarette or rock of cocaine." Further, the partial dissent implies that the majority is following Justice Corrigan's partial dissent in *Thompson* that "urged precisely that conclusion." Neither characterization is accurate. To the contrary, the majority in this case assiduously follows the *Thompson* majority's interpretation of the statutory text as including a continuity component that requires more than a single incident of use. To reiterate, however, while we may or may not agree, from a policy perspective, with the Legislature's determination not to otherwise exclude "personal" use from the reach of the statute, such policy formulations are the province of the Legislature, not the courts. See *People v Mack*, 265 Mich App 122, 128; 695 NW2d 342 (2005).

[7] Only by such reasoning can one conclude, as the partial dissent does, that the majority's interpretation of the text of the statute and the holding of *Thompson* "clashes" with *Thompson*.

-6-

The state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but such use must be a substantial purpose of the users of the property, and the use must be continuous to some degree; incidental use of the property for keeping or distributing drugs or a single, isolated occurrence of drug-related activity will not suffice. The purpose [for] which a person uses property and whether such use is continuous are issues of fact to be decided on the totality of the evidence of each case; the state is not required to prove more than a single specific incident involving the keeping or distribution of drugs if other evidence of continuity exists. [*Thompson*, 477 Mich at 156, quoting *Dawson*, 894 P2d at 678-679.]

After quoting this language from *Dawson*, the Court in *Thompson* indeed stated, "We find this interpretation persuasive and consistent with the interpretation that we have adopted after analyzing the words of the statute." *Thompson*, 477 Mich at 157. But I believe that we must read that statement in the context of what the Court in *Thompson* was actually deciding, and that we should not overread it beyond that context as decreeing statutory elements or exemptions that were not even before the Court for its consideration. *Dawson*'s references to "substantial purpose" and "incidental use" in the above quotation simply were not in any way the focus of the *Thompson* Court's inquiry or analysis, nor did the *Thompson* Court engraft a "substantial purpose" requirement[8] or an "incidental use" (or "personal use") exemption[9] onto

---

[8] A close look at the partial dissent's position reveals the extended journey that the law can take when heading down the slippery slope I have described. The partial dissent cites *Thompson* as finding "persuasive" *Dawson*'s summary of "the prevailing law in other states with respect to the keeping or maintaining element of drug-house statutes," and as adopting *Dawson*'s interpretation of those cases to require proof that use of a house for keeping or distributing controlled substances must be a "substantial purpose" of the users of the property. Thus, the partial dissent posits that our Supreme Court in *Thompson* (1) adopted the analysis of the Alaska Court of Appeals; (2) with respect to the "prevailing law" in other jurisdictions; (3) which had interpreted the "keeping or maintaining element" of those other jurisdictions' drug-house statutes; (4) which the Alaska court construed to include a "substantial purpose" element; (5) which the Alaska court then applied in interpreting the Alaska statute; (6) which the *Thompson* Court then supposedly engrafted onto the Michigan statute notwithstanding the fact that the issue was not before it. A sounder approach, in my view, would be to interpret the language actually employed by the Michigan Legislature in enacting MCL 333.7405(1)(d), and to apply the actual and much more limited holding of our Supreme Court in *Thompson*.

[9] It remains unclear to me whether the partial dissent equates *Dawson*'s use of the term "incidental use" with its own use of the term "personal use." In any event, however, the partial dissent supports its position merely by pronouncing that "it stretches the imagination," at least in the partial dissent's view, that the Legislature intended that MCL 333.7405(1)(d) apply where the illegal controlled substances were for "personal use." Of course, "[t]he touchstone of legislative intent is the statute's language." *People v Gardner*, 482 Mich 41, 51; 753 NW2d 78 (2008).

the statutory language of MCL 333.7405(1)(d). See *People v Spann*, 250 Mich App 527, 532; 655 NW2d 269 (2006) (holding that "nothing will be read into a statute that is not within the manifest intention of the Legislature as gathered from the act itself.").[10]

The partial dissent suggests that our Supreme Court was somehow obliged in *Thompson* to "clarify that its reliance on *Dawson* was limited to the continuity concept" and that it should have "truncated its selected quotation from *Dawson* to remove discussion of the property's 'substantial purpose.' " To the contrary, in my view, the extent of *Thompson*'s reliance on *Dawson* was dictated by and inherent in the limited nature of the issues that were presented in *Thompson*, such that "clarification" and "truncation" were not required; rather, it is the obligation of this Court (as recognized by the majority) to discern the limited nature of the actual *holding* in *Thompson* and to confine its application of *Thompson* accordingly. Otherwise, "dicta" becomes "holding," and we will find ourselves, as I believe the partial dissent does, sliding well down the slope toward judicial policy-making.

This brings me to consider whether the evidence in this case was sufficient to satisfy the continuity requirement under the *Thompson* test. The partial dissent contends that defendant simply manufactured or kept "a small amount of narcotics for personal use." It does not, however, analyze the evidence in the record or provide any evidentiary support for its conclusion. Nor does the partial dissent contend that the evidence is insufficient to satisfy the continuity component that *Thompson* found implicit in the words "keep or maintain."

Based on the majority's thorough evaluation of the evidence, however, I concur with its conclusion that the evidence is sufficient to render the question one that was properly before the jury to determine in its role as fact-finder. This is particularly true, as the majority aptly notes,

---

[10] Whether the Alaska Court of Appeals in *Dawson* intended to engraft such elements or exemptions onto the Alaska statute is both unclear and immaterial to our interpretation of MCL 333.7405(1)(d). The *Dawson* court interpreted Alaska's "crack house statute", AS 11.71.040(a)(5), which the court found was derived from federal statute (which, as is noted below, contains an express "purpose" requirement). *Id*. at 674-675. Further, among the differences between the Alaska and Michigan statutes is the fact that Alaska's statute only applies when the underlying controlled substance violations are felonies under Alaska law; Michigan's statute applies both when the underlying controlled substance violations are felonies and when they are misdemeanors. Compare, AS 11.71.040(a)(5) and MCL 333.7405(d)(1), MCL 333.7403, and MCL 333.7404. It is thus apparent that the Michigan statute applies differently than does the Alaska statute. Moreover, the "substantial purpose" language was used by the *Dawson* court in the context of rejecting the defendant's argument that the property at issue must have been *exclusively* used for keeping and distributing controlled substances. *Id*. at 674-676. In any event, the *Dawson* court seemingly endorsed the view that the Alaska statute applies even to "small amounts of . . . drugs," and held that while the statute requires more than "an isolated incident of possession or distribution," " 'there is no inflexible rule that evidence found only on a single occasion cannot be sufficient to show a crime of a continuing nature.' " *Dawson*, 894 P2d at 675-676 (citation omitted).

because the test for challenges to the sufficiency of the evidence is "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). We must draw all reasonable inferences in favor of the prosecution and defer to the trier of fact on all credibility determinations. *Id*. at 400. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). Circumstantial evidence also can satisfy the continuity element of MCL 333.7405(1)(d). *Thompson*, 477 Mich at 155. Viewed in that light, I am hard-pressed to conclude, as the partial dissent apparently does, that the jury in this case acted unreasonably in concluding that the evidence was sufficient to convict defendant of the crime of maintaining a drug house, MCL 333.7405(1)(d).

Finally, the partial dissent casually suggests that the trial court erred in instructing the jury in this case. Specifically, the partial dissent posits that the jury instruction given by the trial court "omitt[ed] essential elements." In doing so, the majority thus relies on an argument not made even by defendant. See *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009) (this Court will ordinarily not consider issues not set forth in an appellant's statement presented); *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882.

To the contrary, and in any event, it is the partial dissent in my view that seeks to add, after-the-fact, the non-existent statutory elements of "substantial purpose" and "non-personal use," and to then contend that the trial court's failure to instruct the jury according to those non-existent elements requires reversal. And to the extent the partial dissent suggests error in not instructing the jury regarding the "continuity" component of the phrase "keep or maintain," such an instruction was neither requested nor appropriate in this case.

The instruction given by the trial court was a Model Criminal Jury Instruction submitted by the prosecution and approved of by defense counsel, apparently without argument. Our Supreme Court has "urged" the use of these model instructions when they are applicable to a given case. See *People v Dykhouse*, 418 Mich 488, 494 n 1; 345 NW2d 150 (1984). Certainly, trial judges have a duty to modify or disregard model instructions when they do not apply. *Id*. However, more specific instructions are not required unless the circumstances of the case call for them. *People v Martin*, 271 Mich App 280, 337-338; 721 NW2d 815 (2006).

In this case, the parties agreed that the model instruction applied, and consented to its use. The record does not reflect that any party requested a more specific instruction, nor does the record suggest that the matters in dispute in this case included the requirement of "continuity," which the *Thompson* Court found was implicit in the very meaning of the words "keep" and "maintain," as used in MCL 333.7405(1)(d). *Thompson*, 477 Mich at 154 ("[R]egardless of how one defines the words 'keep' and 'maintain,' one cannot avoid a definition that requires some degree of continuity."). The trial court thus properly instructed the jury regarding the "keep or maintain" element, and was not required to give a more specific instruction regarding the "continuity" component of "keep or maintain."

Finally, unlike *Thompson*, which dealt with a vehicle and a potentially isolated instance of delivering drugs, the record in this case reflects that abundant evidence was collected that the house was the site of the manufacture and use of methamphetamines, as well as at the very least

the storage of marijuana. Under these circumstances, and as defendant apparently recognized but the partial dissent does not, there was no need for the trial judge to sua sponte modify the model instruction.

In sum, the partial dissent ignores our proper role and the inherent limitations of the judiciary, conflates the statutory language to alter its meaning, and then would improperly adopt by judicial fiat a new "statutory" element of "substantial purpose" and a new statutory exemption for "personal use" that directly conflict with the legislatively-adopted policy as reflected in the language of the statute itself. I reject that approach, and therefore join the majority in affirming defendant's conviction under MCL 333.7405(1)(d).

/s/ Mark T. Boonstra