# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SCOTT REED BLAISDELL,

Defendant-Appellant.

UNPUBLISHED
February 5, 2015

No. 316835
Cass Circuit Court
LC No. 12-010105-FH

Before: BOONSTRA, P.J., and DONOFRIO and GLEICHER, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*).

I respectfully disagree with the majority's conclusion that sufficient evidence supported defendant's conviction for maintaining a drug house in violation of MCL 333.7405(1)(d)  In my view, the statutory parameters of this offense do not embrace defendant's conduct. Specifically, the majority's interpretation of the legal elements of the offense clashes with *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007).  I would therefore reverse that conviction and vacate the related sentence.

As noted by the majority, under the plain language of MCL 333.7405(1)(d), there are two means by which to keep or maintain a drug house: (1) keep or maintain a house "that is frequented by persons using controlled substances" and "for the purpose of using controlled substances" or (2) keep or maintain a house "that is used for keeping or selling controlled substances."  The prosecution could not establish defendant's guilt under the first theory, and the majority does not suggest otherwise.  We part ways regarding the second method.

In *Thompson*, our Supreme Court defined the elements of MCL 333.7405(1)(d) in connection with a vehicle from which the defendant allegedly sold drugs.  In doing so, the Court rejected this Court's earlier construction of the drug-house statute in *People v Griffin*, 235 Mich App 27; 597 NW2d 176 (1999).  In *Griffin*, the defendant was arrested inside a home suspected of drug activity.  On a dresser near the defendant's personal items, police found an amount of cocaine and certain drug paraphernalia suggesting "that the premises were used as a locus for drug trafficking." *Id.* at 30.  At the time of the defendant's offense, MCL 333.7405(d) was the controlling provision and it

> stated that a person "shall not knowingly keep or maintain a . . . dwelling . . . or other structure or place, which is resorted to by persons using controlled substances in violation of this article for the purpose of using these substances, or

-1-

which is used for keeping or selling them in violation of this article." [*Id.* at 31-32, quoting MCL 333.7405(d) as amended 1988 PA 30.]

The *Griffin* panel held that to " 'keep or maintain' a drug house it is not necessary to own or reside at one, but simply to exercise authority or control over the property for purposes of making it available for keeping or selling proscribed drugs, and to do so continuously for an appreciable period." *Id.* at 32. "This reading of the statute," *Griffin* continued, "comports with other jurisdictions' construction of the terms 'keep or maintain' as used in similar statutes. *Id.* at 32-33.

In *Thompson*, the Supreme Court concluded that *Griffin* improperly engrafted a requirement onto the drug-house statute "that the defendant's actions occurred 'continuously for an appreciable period.' " *Thompson*, 477 Mich at 157. The Court began by defining the phrase "keep or maintain" within the statute. Analyzing the definitions of "keep" and "maintain" in the *Random House Webster's College Dictionary* (1991), the Court noted that these terms are synonyms, meaning " 'to cause to *continue*' " and " 'to keep in existence or *continuance*.' " *Thompson*, 477 Mich at 153-154 (emphasis in original). "[T]he words 'keep' and 'maintain' both contain an element of 'continuity.' " *Id.* at 154. To be convicted of keeping or maintaining a drug house, the prosecution must therefore establish some level of continuity, not a single event. *Id.* at 154-155. Continuity sufficient to satisfy the statute could "be deduced by actual observation of repeated acts." *Id.* at 155. It could also be established, however, by circumstantial evidence. *Thompson* involved a drug vehicle, rather than a dwelling. The Court gave an example of circumstantial evidence that could support an inference of continuity in such cases: "a secret compartment or the like" in the vehicle showing its repeated use in drug trafficking. *Id.*

The *Thompson* Court noted a "remarkable uniformity" in defining the phrase "keep or maintain" among states with substantially similar statutes. *Id.* at 155-156. *Thompson* specifically cited *Dawson v State*, 894 P2d 672 (Alas App, 1995), as containing "[o]ne of the most encyclopedic discussions" of these cases from around the nation. *Thompson*, 477 Mich at 156. In relation to *Dawson*, the *Thompson* Court summarized:

after canvassing the other states, [*Dawson*] concluded that in virtually all other states the requirement to "keep or maintain" requires " 'some degree of continuity' " [*Dawson*, 894 P2d] at 676 (citation omitted), and, fleshing that out, concluded that "courts have uniformly adopted the position that the prosecution is required to prove, and the jury to find, 'something more than a single, isolated instance of the proscribed activity.' " *Id.*, quoting *Barnes v State*, 255 Ga 396, 402; 339 SE2d 229 (1986). The Alaska court then summarized the prevailing law with respect to the keeping or maintaining element of drug-house statutes as follows:

The state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but *such use must be a substantial purpose of the users of the property*, and the use must be continuous to some degree; *incidental use of the property for keeping or distributing drugs or a single, isolated occurrence of drug-related activity*

-2-

*will not suffice.* The purpose [for] which a person uses property and whether such use is continuous are issues of fact to be *decided on the totality of the evidence of each case*; the state is not required to prove more than a single specific incident involving the keeping or distribution of drugs if other evidence of continuity exists. *Dawson*, [894 P2d] at 678-679. [*Thompson*, 477 Mich at 156 (emphasis in *Dawson* added).]

The *Thompson* Court found the *Dawson* interpretation "persuasive and consistent with the interpretation" it adopted based on the language of the Michigan statute. *Id.* at 157.

Ultimately, *Thompson* noted that *Griffin*'s requirement of use "continuously for an appreciable period," improperly suggested the necessity of "a longer period of use with few or no interruptions." *Id.* Although a lengthy period of continuous use is not required, the Supreme Court took pains to emphasize that a single event would be inadequate proof: "[W]e reiterate that 'keep or maintain' is not synonymous with use." *Id.*

The majority accepts that *Thompson* requires the prosecution to prove some continuity of use. Were this the only lesson to be culled from our Supreme Court's pronouncement I would concur in the majority's resolution. However, the *Thompson* Court also accepted the *Dawson* concept that "[t]he state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but such use must be a substantial purpose of the users of the property." Our Supreme Court could have truncated its selected quotation from *Dawson* to remove discussion of the property's "substantial purpose." Or the Court could have clarified that its reliance on *Dawson* was limited to the continuity concept. It did not. Instead, the Supreme Court asserted, "We find this interpretation persuasive and consistent with the interpretation that we have adopted after analyzing the words of the statute." *Id.* at 157. Accordingly, I would conclude that the owner's "substantial purpose" for the property is just as integral to the elements of the offense as continuity of use.

Here, there was no evidence that defendant kept or maintained a house "that [was] used for keeping or selling controlled substances." There is no evidence that defendant sold controlled substances from the residence. The home did contain, however, quantities of marijuana and methamphetamine for personal use, and materials sufficient to support manufacture for personal use. As noted in *Thompson*, 477 Mich at 156, quoting *Dawson*, 894 P2d at 678-679, to meet the first element (that defendant kept and maintained a house) the prosecution had to establish that defendant's retention of controlled substances was " 'a substantial purpose of the users of the property' " and the retention of controlled substances was " 'continuous to some degree.' " "Incidental use" for the prohibited purpose or a single event cannot support a conviction. *Id.* Ultimately, the decision is a question of fact that must be judged " 'on the totality of the evidence.' " *Id.*

The jury could not properly consider defendant's guilt under the second clause of MCL 333.7405(1)(d) absent adequate instruction. Despite *Thompson*'s interpretation of the phrase "keep or maintain" as incorporating concepts of continuity and purpose, the jury in defendant's case was instructed as follows:

-3-

The Defendant is charged with the crime . . . commonly known as . . . knowingly Maintaining or Keeping a Drug House. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt: First, that the Defendant knowingly kept or maintained a building or dwelling. Second, that this building or dwelling was used for illegally keeping or using controlled substances. Third, that the Defendant knew that the building or dwelling was used for such illegal purposes.

By omitting essential components from the elements in the jury instruction, the trial court failed to "fairly present[] the issues to be tried," affecting the outcome of defendant's trial. *People v Kowalski*, 489 Mich 488, 502; 803 NW2d 200 (2011). That the instruction given by the trial court comports with M Crim JI 12.8 is immaterial; where a published jury instruction does not accurately or adequately cite the law, the court must not read it to the jury. *People v Stephan*, 241 Mich App 482, 495-496; 616 NW2d 188 (2000).

Moreover, it stretches the imagination that by enacting MCL 333.7405(1)(d), the Legislature intended to impose criminal liability for keeping or maintaining a drug house on an individual who possesses or manufactures a small quantity of an illegal substance for his or her personal use. Were the offense to apply to those who use the illegal substances kept in the home, the prosecution could levy a drug-house charge against anyone found at home with a single marijuana cigarette or rock of crack cocaine. Justice Corrigan's partial dissent in *Thompson*, 477 Mich at 169, urged precisely that conclusion, and was soundly rejected by the majority. And just as noted by the majority in *Thompson*, 477 Mich at 158, that the evidence in this case fails to make out a drug-house conviction does not give this defendant "a free pass." Defendant was correctly charged with and rightly found guilty of various other controlled substance offenses, which were all accompanied by much longer sentences. Here, there simply is no evidence substantiating that defendant harbored a "substantial purpose" of keeping or maintaining the house for using controlled substances.[1]

Accordingly, I would reverse defendant's conviction for maintaining a drug house in violation of MCL 333.7405(1)(d) and vacate his accompanying sentence of 46 days in jail.

/s/ Elizabeth L. Gleicher

---

[1] In determining that a defendant is not guilty of keeping or maintaining a drug house when he simply manufactures or keeps a small amount of narcotics for personal use, I also find instructive *United States v Johnson*, 737 F3d 444, 449 (CA 6, 2009), in which the United States Court of Appeals for the Sixth Circuit cautioned that a defendant's possession offense cannot be subjected to "the drug house enhancement" "when the defendant keeps drugs in his home for casual personal use."