*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

THOMAS EMERSON MEEKER,

        Defendant-Appellee.

FOR PUBLICATION
May 6, 2021
9:00 a.m.

No. 355046
Jackson Circuit Court
LC No. 19-001610-FH

Before: JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

JANSEN, P.J.

The prosecution appeals by leave granted[1] the trial court's order granting defendant's motion to dismiss the charge of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and allowing defendant to withdraw his guilty plea. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 27, 2019, defendant was under the influence of methamphetamine and began experiencing medical issues as a result. Defendant's mother called 911, and first responders and law enforcement responded. At that time, defendant was in possession of 0.38 grams of methamphetamine for his personal use. While defendant was receiving medical treatment, he bit a first responder's arm.

Defendant was charged with possession of methamphetamine and assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). Defendant initially pleaded guilty to both offenses during a plea hearing on November 15, 2019. In support of his plea, defendant admitted that on May 27, 2019, while under the influence of methamphetamine and experiencing medical issues, he bit a medical first responder on the arm while he was attempting to treat him. Defendant also admitted to possessing 0.38 grams of methamphetamine at the time that he bit the first responder.

---

[1] *People v Meeker*, unpublished order of the Court of Appeals, entered November 13, 2020 (Docket No. 355046).

In exchange for defendant's plea, the prosecutor agreed not to object to defendant's request for "7411 status." This is a reference to MCL 333.7411, under which a person who has not previously been convicted of a controlled substance offense may plead guilty, but then have further proceedings deferred and be placed on probation, and the person will then be discharged upon successful completion of that probation. See *Carr v Midland Co Concealed Weapons Licensing Bd*, 259 Mich App 428, 430-431; 674 NW2d 709 (2003).

Following defendant's plea, the question arose as to whether defendant's bond should be revoked because he continued to test positive for drug use. Defendant became agitated, and repeatedly indicated that he was "clean," that he was having chest pains, and that needed to go to the hospital. The trial court then decided to revoke bond and remand defendant to jail to "dry out." Defendant began to resist the court officer. He also declared that he wanted to kill himself and, therefore, needed to go to the hospital. He further announced that he was in withdrawal and needed to go to the hospital. The trial court advised defendant that he would be evaluated by the nurse and doctor at the jail. Defendant then kicked one of the deputies escorting him out of the court room. The trial court held a second hearing on December 6, 2019 for defendant to reaffirm his guilty plea. Defendant reaffirmed his plea on the record. The trial court agreed to release defendant on bond so that he could be placed in the Tri-Cap treatment program in Saginaw.

Defendant was scheduled to be sentenced on May 21, 2020. Defendant opened the hearing with a request to adjourn proceedings to allow trial counsel time to prepare a motion to withdraw defendant's plea to the possession of methamphetamine charge on the ground that defendant was immune under the "Good Samaritan Law as it pertains to drug overdoses." The trial court granted the request.

On June 10, 2020, defendant moved to dismiss Count I of his information under MCL 333.7403(3)(a), or the "Good Samaritan law." The prosecution filed its response on August 27, 2020. The parties disagreed as to whether defendant was "incapacitated" for purposes of subsection 3(a). The trial court heard arguments on the motion on September 1, 2020. Following a review of video that memorialized the first responders' interactions with defendant and the close of arguments, the trial court granted defendant's motion from the bench, and made the following findings:

> In making a decision on this matter I'm looking at Black's Law Dictionary, which gives the definition of incapacity. "Any person who is in impaired by reason or [sic] mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, to the extent he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person who is deemed incapacitated." Now, as pointed out by [the] prosecution . . . is that the person has to actually be incapacitated. The problem is that that requires the person making a call to have accurately analyzed what they are observing that they are believing isn't causing the person life to be in danger, because of some type of incapacity. Here we had the mother calling who by her statements just in the video has seen him high multiple times and when the officers first get there he's somewhat in a not a comatose state but a not very responsive just starring off in space. She indicates he's been sitting like that all day. In her mind even having seen him or I shouldn't say in her mind, based on what she

-2-

articulated that she has seen him because she was telling you got some bad stuff, you're going to kill yourself if you keep using like you've been using. There were some other comments that she made. I think from her perspective when she makes that call she does so in good faith thinking that he needs help right away and this is a mother who has seen her son stoned many times and even tells him you're going to end up dead if you don't quit using the shit. Therefore, I'm going to allow you to withdraw his plea.

The trial court also dismissed Count I of the information. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo issues of statutory interpretation, which involve a question of law. *People v Rydzewski*, 331 Mich App 126, 132; 951 NW2d 356 (2020). This Court reviews for an abuse of discretion the trial court's decision to grant a motion to withdraw a plea agreement. *Id*. at 137. This Court also reviews for an abuse of discretion the trial court's decision to dismiss charges. *People v Morrison*, 328 Mich App 647, 650; 939 NW2d 647 (2019). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. A trial court necessarily abuses its discretion when it makes an error of law." *Rydzewski*, 331 Mich App at 132 (quotation marks and citation omitted). This Court reviews for clear error the trial court's factual findings. *Id*. at 137. A trial court's findings are clearly erroneous if this Court "is left with a definite and firm conviction that the trial court made a mistake." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted).

## III. ANALYSIS

On appeal, the prosecution argues that the trial court's determination that the Good-Samaritan law required the dismissal of the possession of methamphetamine charge is predicated on a misapplication of MCL 333.7403(3). The prosecution argues that subsection 3(a) requires the defendant to have been "incapacitated," not merely a third party's subjective good faith belief that the person is incapacitated. The prosecution submits that the trial court's construction of MCL 333.7403(3)(a) is at odds with its plain language and adds a requirement not included by the Legislature. We disagree.

As observed by this Court in *Morrison*:

[a] person shall not knowingly or intentionally possess controlled substances or their analogues. MCL 333.7403(1). However, in certain circumstances, if an individual overdoses on a controlled substance, that individual may not be in violation of the statute. As provided in the Good Samaritan law:

An individual who seeks medical assistance for himself or herself or who requires medical assistance and is presented for assistance by another individual if he or she is incapacitated because of a drug overdose or other perceived medical emergency arising from the use of a controlled substance or a controlled substance analogue that he

-3-

or she possesses or possessed in an amount sufficient only for personal use and the evidence of his or her violation of this section is obtained as a result of the individual's seeking or being presented for medical assistance. [MCL 333.7403(3)(a) (emphasis deleted).]

When interpreting a statute, a court's goal is to give effect to the Legislature's intent by first looking to the plain language of the statute. *People v Lowe*, 484 Mich 718, 721-722; 773 NW2d 1 (2009). If the statutory language is unambiguous, the court must apply the language as written, and further analysis is neither required nor permitted. *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999). A court must presume that each word has some meaning and should avoid constructions that render a part of the statute "surplusage or nugatory." *Id*. at 285. A court may not look to the statute's purpose or its public-policy objectives unless the statutory language is ambiguous or unclear. *People v Pinkney*, 501 Mich 259, 272; 912 NW2d 535 (2018). When a court looks to public policy without first analyzing the plain language, the court " 'runs counter to the rule of statutory construction directing us to discern legislative intent from plain statutory language.' " *Id*., quoting *Perkovic v Zurich American Ins Co*, 500 Mich 44, 53; 893 NW2d 322 (2017). [*Morrison*, 328 Mich App at 650-651.]

The sole question presented by this case is whether defendant was incapacitated for purposes of subsection 3(a). There is no caselaw, published or otherwise, construing the term "incapacitated" as employed in the Good-Samaritan law. Because the statute does not define the term, this Court may consult dictionary definitions. *Oakland v Co Road Comm'rs v Michigan Property & Guaranty Ass'n,* 456 Mich 590, 604; 575 NW2d 751 (1998). The term "incapacitated commonly means "made incapable of or unfit for normal functioning." *Black's Law Dictionary* (8th ed) defines the term "incapacitated person" as "[a] person who is impaired by an intoxicant, by mental illness or deficiency, or by physical illness or disability to the extent that personal decision-making is impossible." It defines the term "incapacity" as a "[l]ack of physical or mental capabilities." *Black's Law Dictionary* (8th ed).[2] Similarly, the Merriam-Webster Collegiate Dictionary (11th ed, 2003), defines the term "incapacity" as "the quality or state of being incapable" and a "lack of physical or intellectual power or of natural or legal qualifications."

---

[2] We acknowledge our Supreme Court has instructed that under MCL 8.3a, "undefined statutory terms are to be given their plain and ordinary meaning, unless the undefined word or phrase is a term of art. We consult a lay dictionary when defining common words or phrases that lack a unique legal meaning. *Robinson v Detroit*, 462 Mich 439, 456; 613 NW2d 307 (2000). This is because the common and approved usage of a nonlegal term is most likely to be found in a standard dictionary, not in a legal dictionary. *Horace v City of Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998)." *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007) (footnote omitted). While "incapacitated" is not necessarily a legal term of art, but rather a common word used in the English language, the parties stipulated to the *Black's Law Dictionary* definition of the word in the trial court, and so we use the same.

-4-

We conclude that the record evidence in this case clearly indicates that defendant was rendered unfit for normal functioning and was impaired by an intoxicant. Body camera video footage shows that during the incident underlying these charges, defendant was conscious and minimally responsive, able to provide first responders with his middle name and his birth date, and knew that it took 10 dimes to make a dollar. Defendant also could follow simple commands. He presented a finger so that his pulse and blood-oxygen could be determined. He also presented an arm so that his blood pressure could be measured. Clearly, defendant was not *totally* incapacitated, i.e., unconscious. Nevertheless, there is nothing in the plain language of subsection 3(a) that requires total incapacitation. Moreover, there was ample record evidence to sustain a conclusion that defendant was incapacitated within the plain meaning of the term and, hence, for purposes of subsection 3(a). Defendant's mannerisms, facial expressions, and eyes were those of an individual under the influence of a mind-altering substance. His attention was unfocused. Defendant often stared out into space. His gaze wandered around the porch where he sat. He acted like he was seeing things unseen by the others on the porch. He talked to himself. At one point, he repeatedly stated "I found it" for no apparent reason. He called 911 while two police officers were standing in front of him and speaking to him. Further, his mother reported that he had been sitting and staring all day–sometimes at the wall, sometimes at his phone. Both defendant and his mother indicated that defendant had used "bad meth" or some other substance or substances. Defendant's mother, the two responding police officers, and the two responding paramedics all believed that defendant needed to go to the hospital because of his level of intoxication. One of the responding police officers can be heard stating several times that defendant was stoned out of his mind and out of it.

On the basis of the foregoing, we conclude that the trial court did not err by finding defendant was incapacitated for purposes of MCL 333.7403(3)(a), and therefore did not abuse its discretion by permitting defendant to withdraw his plea and dismiss the possession of methamphetamine charge.

Affirmed.

/s/ Kathleen Jansen
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola