*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 12, 2019

v

RONALD JASON ADAMS,

Defendant-Appellant.

No. 339920
Monroe Circuit Court
LC No. 17-243343-FH

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a bench trial, of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), maintaining a drug house, MCL 333.7405(1)(d), and possession of marijuana, MCL 333.7403(2)(d).[1] The trial court sentenced defendant as a controlled substance second offender, MCL 333.7413(2), to concurrent prison terms of 48 to 480 months for the possession with intent to deliver cocaine conviction, 24 to 48 months for the maintaining a drug house conviction, and 365 days in jail for the possession of marijuana conviction. We affirm.

## I. BACKGROUND

Defendant's convictions arise from the discovery of marijuana and cocaine residue during a search of a house on Eastchester Street in Monroe. The search was conducted pursuant to a search warrant. The day before the search the police had the house under surveillance and observed a vehicle arrive at the house, saw the driver enter the house, leave after a couple minutes, and drive away. The police followed the vehicle and performed a traffic stop during which they found cocaine. The driver reported that he had purchased the cocaine from defendant at the Eastchester house. His information was used to obtain the warrant.

---

[1] Defendant was also charged with, but found not guilty of, one count possession of hydrocodone, MCL 333.7403(2)(b)(*ii*).

When the police executed the search warrant the next day, they had to forcibly enter the house. Upon entering, officers saw defendant running toward a bathroom and then flush the toilet before the officers could get to him. Defendant was the only occupant of the home at the time of the search. Inside the bathroom where defendant was found, the police found a glass plate, glass bowl, a razor with cocaine residue, a pair of gloves, and a box of sandwich baggies with some of the corners cut. A baggie of marijuana was found inside defendant's pants pocket. During a search of the premises, officers found two more baggies of marijuana and a container or bowl with cocaine residue on it. In addition, they discovered a ledger with dates and dollar amounts owed, digital scales, additional baggies with the corners cut, and a press with white powder residue. Defendant's cell phone contained numerous text messages that were consistent with the sale of drugs from the home.

## II. SUPPRESSION OF EVIDENCE

Defendant first argues that the search warrant was deficient, and therefore, the trial court erred by denying his motion to suppress the evidence discovered during the execution of the warrant. We disagree.

The trial court's ultimate decision on a constitutional challenge to suppression of evidence is reviewed de novo. *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016). Factual findings made by the court are reviewed for clear error. *People v Hill*, 299 Mich App 402, 405; 829 NW2d 908 (2013). A factual finding is clearly erroneous if, after the entire record is reviewed, an appellate court is left with a definite and firm conviction that a mistake has been made. *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014). A trial court's decision whether to hold an evidentiary hearing is reviewed for an abuse of discretion. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). "An abuse of discretion occurs when a trial court's decision 'falls outside the range of reasonable and principled outcomes.' " *Id.* (citation omitted).

The United States and Michigan Constitutions protect against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The lawfulness of a search and seizure depends on reasonableness. *Mahdi*, 317 Mich App at 457. A police search or seizure is constitutionally reasonable when probable cause and possession of a warrant are present. *Hill*, 299 Mich App at 418. Probable cause exists when police are aware, at the time of the search, of facts and circumstances that would lead a reasonably prudent person to believe that a crime has been or is being committed and evidence will be found in a particular location. *People v Wood*, 321 Mich App 415, 423; 910 NW2d 364 (2017). A search warrant will issue upon a showing of probable cause through an affidavit made on oath to a judge or an authorized district court magistrate. MCL 780.651(1).

> Probable cause must be based on facts presented to the issuing magistrate by oath or affirmation. When probable cause is averred in an affidavit, the affidavit must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs. The affiant may not draw his or her own inferences, but must state the matters that justify the drawing of inferences. However, the affiant's experience is relevant to the establishment of probable cause. [*People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009) (citations omitted).]

An affidavit may be premised on information from an unknown person provided the judge or magistrate may conclude that the person spoke with personal knowledge of the information and either the unnamed person is credible or that the information is reliable. MCL 780.653(b). When a confidential informant admits his own participation in illegal activity and where the statement tended to subject the informant to criminal liability such that a reasonable person in his position would not have admitted it unless he believed it to be true, the statement has a high indicia of reliability. *In Re Forfeiture of United States Currency*, 172 Mich App 200, 206-207; 431 NW2d 437 (1988); *People v Gleason*, 122 Mich App 482, 491; 333 NW2d 85 (1983); MRE 804(b)(3). Furthermore, a warrant may issue based upon the information provided by a confidential informant when the police conduct an independent investigation to confirm the accuracy and reliability of the information. *Waclawski*, 286 Mich App at 699. A warrant may be issued even if based on hearsay as long as there is a substantial basis for crediting the hearsay, and the affiant need not present direct, personal observations provided the affiant believed that the unnamed informant was credible or his information reliable. *United States v Ventresca*, 380 US 102, 108; 85 S Ct 741; 13 L Ed 2d 684 (1965). In *Ventresca*, the United States Supreme Court explained:

> [D]ecisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
>
> This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. [*Id.* at 108-109 (citations omitted).]

"A magistrate's finding of probable cause and his or her decision to issue a search warrant should be given great deference and only disturbed in limited circumstances." *Franklin*, 500 Mich at 101.

A defendant is entitled to a hearing to challenge the validity of a search warrant upon making a considerable demonstration that a false statement knowingly and intentionally, or with reckless disregard for the truth, was listed in the warrant affidavit by the affiant and served to support the probable cause finding. *People v Martin*, 271 Mich App 280, 311; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). "To prevail on a motion to suppress evidence, the defendant must show by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to a finding of probable cause." *People v Chandler*, 211 Mich App 604, 612; 536 NW2d 799 (1995).

When evidence is seized contrary to the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial unless an exception to the warrant requirement applies. *Mahdi*, 317 Mich App at 458. The exclusionary rule is a judicial doctrine created to compel respect for the constitutional guarantee and deter police misconduct. *Hill*, 299 Mich App at 405. However, the suppression of evidence should only occur as a last resort, and is inappropriate in the absence of governmental misconduct. *People v Frazier*, 478 Mich 231, 247, 250; 733 NW2d 713 (2007). Consequently, Michigan has adopted the good-faith exception to the exclusionary rule. *People v Goldston*, 470 Mich 523, 525-526; 682 NW2d 479 (2004). Exclusion of evidence is inappropriate if the police acted in good faith on the search warrant and the information in the affidavit was not false or misleading and the issuing judge or magistrate did not wholly abandon the judicial role. *Id*. at 542-543.

In this case, the affidavit submitted in support of the search warrant described the home to be searched, the property sought, and the affiant's 11 years of experience as a member of the sheriff's office and current assignment investigating narcotics. With regard to specific factual allegations, the affidavit provided, in pertinent part:

4. A. Affiant certifies on January 3, 2017 Affiant observed a vehicle park in front of 318 Eastchester St. Once parked the driver, CI #3650, exited the vehicle and enter 318 Eastchester St through the front entry/exit service door. After approximately two minutes CI #3650 exited 318 Eastchester St and re-entered the driver's seat of the vehicle.

B. Affiant certifies on January 3, 2017 a traffic stop was conducted by Lieutenant Lindsey of the Monroe Police Department on the vehicle due to LEIN indicating the vehicles Michigan registration plate as expired. LEIN also indicated the vehicle as EIV=N indicated the vehicle was being operated without securities.

C. Affiant certifies on January 3, 2017 Lieutenant Lindsey conducted a consent search of CI #3650's personal property and advised Affiant of the following:

1. Affiant was advised by Lieutenant Lindsey that cocaine was recovered from CI #3650's personal property.

2. Affiant was advised by Lieutenant Lindsey that CI #3650 admitted to swallowing one crack cocaine rock prior to contact with Lieutenant Lindsey.

D. Affiant certifies on January 3, 2017 Officer Oetjens interviewed CI #3650 regarding his/her contact with the occupants of 318 Eastchester St. Officer Oetjens advised affiant the following:

1. CI #3650 stated to Officer Oetjens that he/she went to 318 Eastchester St at approximately 1300hrs on January 3, 2017 and observed a narcotics transaction for crack cocaine.

i. CI #3650 is familiar with crack cocaine due to consuming it several times a week. The last time he/she used crack cocaine was December 31, 2016.

2. CI #3650 is familiar with a subject named "Bird" who resides at 318 Eastchester St in a green house. He/she later indicated "Bird" as Ronald Adams.

3. CI #3650 observed several $10 and $20 rocks of crack cocaine being sold out of 318 Eastchester St on January 3, 2017 by Ronald Adams.

4. CI #3650 indicated he/she has seen Ronald Adams sell crack cocaine out of 318 Eastchester St several times since December 26, 2016.

5. Based on Affiant's training and experience and the information contained in this Affidavit, Affiant believes Ronald Jason Adams, adult male, date of birth 4/26/1977 is involved with the use and distribution of illegal narcotics at the above location and a search of the premises, as requested, is likely to produce evidence of criminal activity involving controlled substances.

6. Based on Affiant's training, Affiant believes suppression of this Affidavit is necessary to protect this ongoing investigation, as well as the privacy or safety of a victim or witness.

On appeal, defendant argues that the affidavit was deficient because the identity of the confidential informant was not disclosed and information attesting to the reliability or credibility of the informant was lacking, the anonymous informant made only one purchase the day before so a pattern of illegal activity was not established by the affidavit, and a hearing was not held to cross-examine the informant and determine if false information was provided.

Preliminarily, although defendant had moved to suppress the evidence, in part, on the basis that the affiant knowingly and intentionally inserted false material into the affidavit, the defense declined the trial court's offer to conduct an evidentiary hearing and instead agreed that the motion could be resolved based solely on the affidavit. Because the affidavit offered in support of the search warrant is presumed to be valid, *Martin*, 271 Mich App at 311, and because defendant declined the court's offer to conduct an evidentiary hearing and it is not otherwise

apparent from the face of the affidavit that any allegations are false, defendant did not meet his burden of showing "by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to a finding of probable cause." *Chandler*, 211 Mich App at 612.

We also reject defendant's argument that the affidavit was otherwise insufficient to establish probable cause to issue the warrant. A search warrant should issue upon a finding of probable cause, which exists when the police are aware of facts and circumstances that would lead a reasonably prudent person to believe that a crime has been committed and evidence will be found in the location. *Wood*, 321 Mich App at 423; MCL 780.651(1). An affidavit may be premised on information from a confidential informant if it can be concluded that the individual spoke with personal knowledge and the person is credible or the information reliable; the informant's self-implication to criminal liability is indicative of reliability. *In Re Forfeiture of United States Currency*, 172 Mich App at 206-207; MCL 780.653(b). The affidavit should be interpreted in a commonsense, not hypertechnical manner, and where doubt exists in marginal cases, it should be resolved by the preference to be accorded to warrants. *Ventresca*, 380 US at 108-109.

A review of the affidavit reveals that the affiant was conducting surveillance of the Eastchester residence when he observed the confidential informant driving a vehicle that parked at the home, enter the home for approximately two minutes, and return to his vehicle. A traffic stop of this vehicle was initiated because of a registration and insurance issue. The informant admitted to the police that he had swallowed crack cocaine before making contact with the officer conducting the stop. However, additional cocaine was recovered in his personal property. The informant advised the police that he had purchased the cocaine from defendant, who he referred to as Bird, at the Eastchester residence, that defendant had several more rocks of crack cocaine available for sale, and that defendant had been selling from this residence since December 26, 2016. The confidential informant further advised that he had consumed crack cocaine several times a week, and his last use occurred on December 31, 2016.

We conclude that the trial court did not err by denying the motion to suppress. The confidential informant admitted to involvement in criminal activity, thus creating a high degree of reliability in and of itself. The officers observed the CI's rapid entry and exit from a home they were surveilling due to suspected drug activity and made the stop within minutes of that activity. The information provided included the informant's allegations that several more rocks of cocaine were available for sale and that defendant had been selling cocaine from the residence for at least the past week. Given a common sense analysis of the information and according the deference due to warrants, we find that there was probable cause to believe that additional evidence of drug dealing would be found at the home.

Defendant also attacks the information supplied by the confidential informant on several fronts. He challenges the informant's anonymity, but an affidavit may be premised on information provided by an unnamed person if the judge or magistrate can conclude that the person spoke with personal knowledge. MCL 780.653(b). In this case, the affidavit indicated that the informant stated that he personally purchased the cocaine from defendant, that he personally saw several other rocks of cocaine at the premises, and that he had personally seen

defendant sell rocks of cocaine from the residence "several times" since December 26. This information provided a substantial basis for the magistrate to conclude that the informant had personal knowledge of the information he reported.

Defendant also attacks the informant's credibility and reliability. As indicated earlier, when an affidavit is based on information supplied by an unnamed person, there must be a sufficient basis for the magistrate to conclude that the unnamed person is credible or the information supplied is reliable. *Ventresca*, 380 US at 108; MCL 780.653(b). In this case, the informant admitted his personal involvement in purchasing illegal narcotics from defendant, conduct that would subject him to criminal liability. The police discovered cocaine during a consent search of the informant's personal property. In addition, the independent police surveillance of defendant's residence confirmed the informant's arrival at and departure from the residence. This information provided a substantial basis for the magistrate to conclude that the information supplied by the informant was reliable.

Defendant also complains that he did not have the ability to cross-examine the informant at a suppression hearing and to explore whether his statements may have been false, made to deflect liability onto another. As indicated earlier, the trial court afforded defendant the opportunity for a suppression hearing at which these issues could have been explored, but defendant declined the offer. Because defendant declined the opportunity for a suppression hearing and agreed instead that the motion could be decided solely on the basis of the affidavit, the trial court did not abuse its discretion by declining to hold a suppression hearing. *Franklin*, 500 Mich at 100. Further, because the affidavit is presumed to be valid and it is not apparent from the face of the affidavit that the information supplied by or attributed to the informant was false, defendant is not entitled to relief on this basis.

Moreover, the trial court found that the good-faith exception also applied to prevent application of the exclusionary rule. Indeed, the suppression of evidence should only occur as a last resort, and exclusion of evidence is inappropriate in the absence of governmental misconduct. *Frazier*, 478 Mich at 247, 250. The police conducted surveillance of the residence on Eastchester. Although they did not personally observe the sale of narcotics, the confidential informant went to the home for a mere two minutes and exited the home. A traffic stop of that vehicle revealed the presence of crack cocaine, and the informant subjected himself to criminal liability by advising the police of his drug use and purchase from defendant. Although defendant contends that the police could have taken additional or different steps to verify whether drug dealing was occurring at Eastchester home, their decision to place the facts that were then available in an affidavit for a probable cause determination by a magistrate did not constitute governmental misconduct. Accordingly, we find no basis for disagreeing with the trial court's decision that the good-faith exception to the exclusionary rule also operated to preclude suppression of the evidence.

For these reasons, defendant has not demonstrated that the trial court erred by denying his motion to suppress.

### III. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that there was insufficient evidence to support his convictions of possession with intent to deliver cocaine and maintaining a drug house. We disagree.

"This Court reviews de novo challenges to the sufficiency of the evidence." *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). When reviewing a challenge to the sufficiency of the evidence following a bench trial, this Court examines the evidence in a light most favorable to the prosecution to determine whether the trial court could find the essential elements of the crime were proven beyond a reasonable doubt. *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). This Court will not interfere with the trier of fact's decisions regarding the credibility of witnesses. *Solloway*, 316 Mich App at 180. All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to establish the elements of a crime. *Id*. at 180-181. When intent is at issue, the factfinder can infer intent from the defendant's words or from the act, the means, or the manner employed to commit an offense. *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001).

### A. POSSESSION WITH INTENT TO DELIVER COCAINE

"[T]o support a conviction for possession with intent to deliver less than fifty grams of cocaine, it is necessary for the prosecutor to prove four elements: (1) that the recovered substance is cocaine, (2) that the cocaine is in a mixture weighing less than fifty grams, (3) that defendant was not authorized to possess the substance, and (4) that defendant knowingly possessed the cocaine with the intent to deliver." *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). There are two components to the requirement that defendant is knowingly in possession with intent to deliver: possession and intent. *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). Possession may be actual or constructive, and constructive possession may be established when the totality of the circumstances contains a sufficient nexus between defendant and the contraband. *People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012). A person may be in constructive possession if he knowingly has the power and the intention to exercise dominion or control over the contraband. *Id*. The possession can also be joint or exclusive. When a person is in proximity to contraband coupled with indicia of control, a person is in constructive possession. *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011).

During the execution of the search warrant, the police, who were aware of the location of the first-floor bathroom, saw defendant run toward it as they forced entry into the home. When a detective reached defendant, he was standing over the toilet as it flushed. This provided circumstantial evidence of destruction of drugs and the act of exercising control over them. Additionally, subsequent searches revealed the presence of marijuana, cocaine residue, a ledger a press, a razor blade, and baggies with cut corners. Although the police did not find a larger quantity of cocaine, the evidence supported an inference that quantities of cocaine were being sold from the home. The ledger book listed numerous debts owed. Although defendant claimed that the home was occupied by his sister, her children, and her boyfriend, and that he was merely a guest at the time, police witnesses testified that surveillance of the home indicated that defendant was the primary person at the home, he was involved in the sale of cocaine a day

before the execution of the search warrant, and he was the sole occupant of the home at the time it was searched. In addition, a Secretary of State form found inside the house identified defendant as the registrant of a 2002 Chevy station wagon at the house's address. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the trial court to find beyond a reasonable doubt that defendant knowingly possessed the cocaine found inside the house, with the intention of selling it.

Defendant's reliance on the personal use exception to the manufacture of drugs does not compel a different result. Under MCL 333.7106(3)(a), the term "manufacture" contains an exception for "[t]he preparation or compounding of a controlled substance by an individual for his or her own use." That exception is an affirmative defense to a charge of manufacturing a controlled substance; it is not an element of the crime. *People v Baham*, 321 Mich App 228, 244; 909 NW2d 836 (2017). Once the prosecutor established a prima facie case, the burden was on defendant to present some competent evidence of the personal use exception. *Id*.; MCL 333.7531(1). Defendant testified that he personally used marijuana, but he denied any personal use of cocaine. Thus, the exception did not apply to the cocaine. Regardless, given the discovery of evidence consistent with the sale and distribution of cocaine, such as digital scales, a white powder residue, a press, and baggies with cut corners, and the evidence that cocaine was purchased from defendant the day before the police raid, the evidence was sufficient to enable the trial court to find beyond a reasonable doubt that the cocaine found at the premises was not intended for personal use.

## B. MAINTAINING A DRUG HOUSE

MCL 333.7405(1)(d) provides that a person shall not

[k]nowingly keep or maintain a store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances, or that is used for keeping or selling controlled substances in violation of this article.

A person satisfies the keep or maintain a drug house requirement if that person has the ability to exercise control or management over the house. *People v Bartlett*, 231 Mich App 139, 152; 585 NW2d 341 (1998). "The phrase 'keep or maintain' implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence, such as perhaps a secret compartment or the like, that conduces to the same conclusion." *People v Thompson*, 477 Mich 146, 155; 730 NW2d 708 (2007). Although the continuity requirement may be satisfied by a showing of intermittent use, "keep or maintain" is not synonymous with "use." *Id*. at 157. When a vehicle is used by a defendant to keep or deliver drugs on one occasion, and there is no other evidence of continuity, there is insufficient evidence to support keeping or maintaining a drug vehicle. *Id*. Nonetheless, the prosecution is not required to prove more than a single specific incident involving the keeping or distribution of drugs if other evidence of continuity exists. *Id*. at 155-156.

Defendant argues that the evidence did not support his conviction of maintaining a drug house because there was only one drug transaction at the home the day before the raid, and thus

there was no showing of maintaining a drug house over a period of time. However, the "keep or maintain" requirement may be satisfied by actual observation of repeated acts *or* circumstantial evidence that leads to the same conclusion. *Thompson*, 477 Mich at 155. In this case, apart from the one drug transaction the day before the police raid, there was sufficient circumstantial evidence that defendant maintained a drug house. The police conducted surveillance of the residence before the raid and observed defendant there on an "almost daily" basis. Defendant was the primary person observed at the residence, and he was the only occupant of the house at the time of the raid. Documentation was discovered that defendant had a vehicle registered to him at the Eastchester address. The police observed a pattern of visitors at the home that was consistent with drug trafficking, and items found in the home during the execution of the search—specifically digital scales, a powdery residue, razor blade, plastic baggies, and a ledger book—supported an inference that defendant was involved in the sale of drugs from the home. In addition, although defendant was not employed, he responded to text messages by indicating that he was "working" and he directed people to meet him at either Eastchester Street or the residence. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the trial court to find beyond a reasonable doubt that defendant had control or management over the house and knowingly maintained the house for the purpose of keeping or selling controlled substances. Thus, there was sufficient evidence to support defendant's conviction of maintaining a drug house.

## IV. SCORING OF OV 19

Finally, defendant argues that the trial court erred by assessing 10 points for offense variable (OV) 19 of the sentencing guidelines, MCL 777.49(c), without providing any justification for the score. Although the trial court did not state its reasons for the 10-point score, neither party objected to the scoring of OV 19 at sentencing, and defendant did not challenge the scoring of OV 19 in either a motion for resentencing or a motion to remand filed in this Court. Therefore, this issue is unpreserved. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018); MCL 769.34(10). We review unpreserved scoring issues for plain error affecting substantial rights. *People v Stevens*, 306 Mich App 620, 623; 858 NW2d 98 (2014). An error is plain if it is clear or obvious. *People v Green*, 322 Mich App 676, 681-682; 913 NW2d 385 (2018); *People v Everette*, 318 Mich App 511, 526-527; 899 NW2d 94 (2017).

A trial court's scoring decisions must be supported by a preponderance of the evidence. *People v Ostanowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "A sentencing court may consider all record evidence before it when calculating the guidelines, including . . . testimony taken at a . . . trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (citation omitted).

Offense variable 19 is to be scored where there is a "threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services." MCL 777.49. Ten points are to be scored when the "offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). The plain meaning of the phrase "interfere with the administration of justice" is "to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). Interference with the administration of justice also encompasses the law enforcement component,

see, e.g., *People v Barbee*, 470 Mich 283, 287-288; 681 NW2d 348 (2004) (providing a false name to the police), and may include conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense, *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016).

In its factual findings at trial, the trial court acknowledged a detective's testimony that he saw defendant run to the bathroom as the police forced entry into the home to execute the search warrant, and that defendant was found standing over a flushed toilet. A bowl, razor, cocaine residue, and rubber gloves were also in the bathroom where defendant was found. The court found that the materials were in the bathroom so they could be easily flushed if necessary. The circumstances supported an inference that defendant knowingly interfered with the execution of the search warrant by running to the bathroom and hurriedly flushing a substance down the toilet to destroy evidence upon learning that law enforcement was raiding the premises. Because the court's factual findings at trial support the 10-point score for OV 19, there was no plain error in scoring this variable.

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan