*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TAVON JOHNATHON MAGEE,

        Defendant-Appellant.

UNPUBLISHED
June 27, 2019

No. 340421
Oakland Circuit Court
LC No. 2016-261120-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEVEN SHAQUILLE ERKINS,

        Defendant-Appellant.

No. 340424
Oakland Circuit Court
LC No. 2016-261110-FH

Before: MURRAY, C.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

In these consolidated appeals, defendants Tavon Johnathon Magee and Steven Shaquille Erkins appeal their respective convictions after a joint jury trial. Magee was convicted of two counts of possession with intent to deliver 50 to 449 grams of a controlled substance,[1] one count of possession with intent to deliver less than 50 grams of cocaine,[2] possession of ammunition by

---

[1] MCL 333.7401(2)(a)(*iii*) (heroin and fentanyl).

[2] MCL 333.7401(2)(a)(*iv*)

-1-

a felon,[3] and maintaining a drug house.[4] He was sentenced as a third habitual offender to concurrent prison terms of 18 to 40 years for the controlled substances convictions, 6 to 10 years for possession of ammunition by a felon, and 2 to 4 years for maintaining a drug house. Erkins was convicted of one count of possession with intent to deliver 50 to 449 grams of a controlled substance,[5] and one count of possession with intent to deliver less than 50 grams of cocaine.[6] He was sentenced to concurrent prison terms of 6 to 20 years and 2 to 20 years for his convictions. We affirm.

## I. FACTUAL BACKGROUND

These cases arise out of an investigation by the Oakland County Sheriff's Department of suspected drug trafficking at a house located at 26 Gingell Street in Pontiac, Michigan. Over a six-month period of surveillance, detectives observed activity consistent with hand-to-hand drug transactions. The house was owned by Magee's mother. The lead investigator, Detective Daniel Main, testified that Magee was the person he saw most frequently at the house. Main observed Magee engaging in activity consistent with drug trafficking.

On the basis of the investigation, officers obtained and executed a search warrant at 26 Gingell. Detective Jason Teelander was the first officer to enter the house. He testified that he made eye contact with Erkins who was seated at a dining table; Erkins yelled "police" and ran to the kitchen. Teelander found Erkins lying on the steps to the basement. Magee was in the kitchen near the basement stairs; two other people were also in the home.

At the bottom of the stairs, officers found various bags containing crack cocaine, fentanyl, and fentanyl-heroin mixture. They also found drug trafficking and packaging paraphernalia including plastic bags and digital scales. Teelander testified that it looked like someone had thrown the items found at the bottom of the basement stairs in haste. Magee had $3400 in his possession, which according to testimony was the approximate wholesale value of the fentanyl and fentanyl-heroin mixture found in the basement. Officers also found crack cocaine along with packaging paraphernalia on the dining table. The jury convicted both defendants of two counts of possession with intent to distribute with respect to the fentanyl and cocaine found in the home.

Officers also found bags containing heroin in a vehicle at the house that Detective Main had previously observed Magee driving. The jury found Magee guilty of possession with intent to distribute regarding the heroin found in the vehicle, but acquitted Erkins of that charge.

A number of items bearing the last name "Magee" were found in the home, including a piece of mail addressed to defendant Magee at 26 Gingell. However, it did not appear to the

---

[3] MCL 750.224f(6).

[4] MCL 333.7405(1)(d).

[5] MCL 333.7401(2)(a)(*iii*) (fentanyl).

[6] MCL 333.7401(2)(a)(*iv*).

officers that anyone actually lived in the house. Officers also found three boxes of ammunition. As stated, the jury found Magee guilty of maintaining a drug house and the crime of being a felon in possession of ammunition. But the jury acquitted Magee of possession marijuana,[7] and possession of oxycodone,[8] both of which were found in the home.

## II. MAGEE'S CLAIMS OF ERROR

### A. JOINT TRIALS

Magee argues that the trial court abused its discretion by denying his motion for a separate trial. We disagree.[9]

"There is no absolute right to separate trials, and in fact, a strong policy favors joint trials in the interest of justice, judicial economy, and administration." *People v Bosca*, 310 Mich App 1, 44; 871 NW2d 307 (2015) (quotation marks, brackets and citation omitted). "Joinder is appropriate if the offenses are related." MCR 6.120(B)(1). Offenses are "related" if they are "based on (a) the same conduct or transaction, or (b) a series of connected acts, or (c) a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1). In this case, it is clear that the charges against Magee and Erkins were "related."

"On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant." MCR 6.121(C). Severance is required "only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994). A defendant must show more than mere inconsistency of defenses to warrant severance; rather, the defenses must be antagonistic, mutually exclusive, or irreconcilable. *Id*. at 347-349. Incidental prejudice that inevitably occurs in a multi-defendant trial is insufficient. *Id*. at 349.

Before the trial court, defendants argued that their respective defenses were antagonistic because each would point a finger at the other as the party responsible for the drugs seized by the police. At trial, neither defendant testified but their respective counsels did suggest the culpability of the other defendant. However, the fact that defendants pointed fingers at each other does not establish that their defenses were mutually exclusive or irreconcilable so as to prejudice Magee's right to a fair trial. See *id*. at 349-350. The jury could have found the evidence insufficient as to both defendants, or sufficient only as to one, or sufficient to convict

---

[7] MCL 333.7403(2)(d).

[8] MCL 333.7403(2)(a)(*v*).

[9] A trial court's decision on a motion for a separate trial is reviewed for an abuse of discretion. *People v Hana*, 447 Mich 325, 331, 346; 524 NW2d 682 (1994). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

both on either an individual or joint possession theory. Accordingly, the trial court's decision to deny severance was not an abuse of discretion.

On appeal, Magee argues that evidence of his drug transactions during the surveillance period would not have been admissible had he been granted a separate trial. However, as discussed in greater detail below, the detectives' observations of Magee's suspected drug trafficking was directly relevant to his case and would have been admissible at a separate trial as well.

It appears from the record that the only evidence admitted solely against Erkins was his statement to the police. However, that statement was not of significant prejudice to Magee. In it Erkins simply denied knowledge of the drugs, the house, and its occupants. His statement did not inculpate Magee or anyone else. And the trial court specifically instructed the jury that Erkins's statement to the police could not be considered as evidence against Magee. In sum, Magee has not shown that his substantial rights were affected by a joint trial with Erkins.

## B. SURVEILLANCE EVIDENCE

Magee next argues that the trial court abused its discretion by admitting the detectives' testimony that they had observed Magee engaging in activity consistent with illegal drug transactions in the months preceding the execution of the search warrant. Magee argues that this testimony was inadmissible other-acts evidence under MRE 404(b).[10]

The trial court's ruling was proper. The detectives' testimony was directly relevant to the charge of maintaining a drug house. To obtain a conviction on such a charge, the prosecution must prove beyond a reasonable doubt that house "was used with 'some degree of continuity' for 'keeping or selling' controlled substances." *Bosca*, 310 Mich App at 25, quoting *People v Thompson*, 477 Mich 146, 155; 730 NW2d 708 (2007). Evidence of "some degree of continuity" regarding keeping or selling drugs "can be deduced by actual observation of repeated acts or circumstantial evidence . . . that conduces to the same conclusion." *Thompson*, 477 Mich at 155. The detectives' testimony that they observed Magee engaging in what appeared to be drug transactions at or near the Gingell Street house was directly relevant to whether the house was being used for the purpose of keeping or selling controlled substances. As direct evidence of the charged crime, the testimony did not constitute other-acts evidence but instead was admissible under MRE 401.[11] See *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989).

---

[10] "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). But appellate review of a preliminary issue of law regarding admissibility of evidence, such as the construction of a rule of evidence, is de novo. *Id*. "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Duncan*, 494 Mich at 722-723.

[11] MRE 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

-4-

## C. DISCOVERY

Finally, Magee argues that the trial court erred in not ordering the prosecution to produce police reports and that there is a reasonable probability that he would have been acquitted had the reports been produced. This claim is without merit as Magee fails to articulate how he believes those reports might properly aid his defense.[12]

"Defendants have a due process right to obtain evidence in the possession of the prosecutor if it is favorable to the accused and material to guilt or punishment." *People v Stanaway*, 446 Mich 643, 675-680; 521 NW2d 557 (1994), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish a *Brady* violation, a defendant must show that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *People v Dimambro*, 318 Mich App 204, 219; 897 NW2d 233 (2016) (quotation marks and citation omitted).

On the first day of trial, Magee's defense counsel moved for production of police reports concerning drug purchases by confidential informants at 26 Gingell Street. The prosecutor represented that there were four controlled buys by confidential informants during the investigation, two of which were included in the affidavit for the search warrant. She added that the police did not make a report regarding every hand-to-hand transaction that they observed during the surveillance period. The prosecutor stated that the reports concerning the controlled buys did not contain exculpatory material, and expressed concern regarding protecting the identities of the confidential informants. Defense counsel could not explain how the reports regarding the controlled buys could aid the defense, indicating that he only wanted the reports for a log of dates when officers observed Magee during their surveillance.

The trial court denied the motion to produce and ruled that evidence of the controlled buys would not be allowed at trial. The court reasoned that the controlled buys were not relevant to the charged offenses because they were used only to establish probable cause for a search warrant.[13]

---

[12] A trial court's decision whether to grant discovery is reviewed for an abuse of discretion. *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). A trial court abuses its discretion when the court's decision is outside the range of reasonable and principled outcomes. *Duncan*, 494 Mich at 722-723. A due process claim is reviewed de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007).

[13] Magee correctly notes that MCR 6.201(B)(1) generally requires the prosecution to provide "any police report and interrogation records concerning the case . . . ." However, the trial court has broad discretion to determine the remedy, if any, for a discovery violation:

On appeal, Magee again fails to explain how the police reports of the controlled buys would have assisted his defense. More accurately, he does not articulate what he expects or hopes to find in the reports. Indeed, it is difficult to see how the reports would contain exculpatory evidence. Magee's contention that the reports were "potentially favorable" is an expression of hope and an expression of hope is insufficient without at least an articulable theory of relevance. See *Stanaway*, 446 Mich at 680. Finally, given the trial court's ruling that no evidence concerning the controlled buys would be permitted at trial, the police reports would not have been useful for impeachment purposes. We therefore find no *Brady* error.

## III. ERKINS'S CLAIMS OF ERROR

## A. SUFFICIENCY OF THE EVIDENCE

Erkins first argues that there was insufficient evidence to sustain his convictions of possession with intent to deliver controlled substances. We conclude that sufficient evidence was presented to support the verdict.[14]

Erkins was convicted of possession with intent to deliver specified quantities of the control substances cocaine and fentanyl. MCL 333.7401. The offenses require proof that (1) the defendant possessed the controlled substance, (2) the defendant knew that he possessed a controlled substance, (3) the defendant intended to deliver the controlled substance to someone else, and (4) the controlled substance intended to be delivered satisfied statutory weight or quantity requirements. See *People v Robar*, 321 Mich App 106, 115, 121; 910 NW2d 328 (2017); *People v Wolfe*, 440 Mich 508, 516-517; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); M Crim JI 12.3. In this case, Erkins disputes that there was sufficient evidence showing that he knowingly possessed the controlled substances.

"A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive." *Wolfe*, 440 Mich at 520.

---

If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. . . . An order of the court under this section is reviewable only for abuse of discretion. [MCR 6.201(J).]

Moreover, for the reasons discussed, Magee fails to show that his defense was prejudiced by the claimed discovery violation. See *People v Davie (After Remand)*, 225 Mich App 592, 597-599; 571 NW2d 229 (1997).

[14] In reviewing challenges to the sufficiency of the evidence, we view the evidence "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014).

"Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002) (citation omitted). Constructive possession may be proved by direct or circumstantial evidence that the defendant has the power to dispose of the drugs, or has exclusive control or dominion over property where the drugs are found, or by evidence that establishes a sufficient connection between the defendant and the drugs to support an inference that the defendant exercised dominion and control over them. *Wolfe*, 440 Mich at 521. In sum, "constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id*. Whether constructive possession is established will generally be a factual question for the jury to decide. *People v Hill*, 433 Mich 464, 469; 446 NW2d 140 (1989).

First, there was sufficient evidence for a reasonable jury to conclude that Erkins constructively possessed the cocaine found on the dining room table at which he was seated when the police first observed him. There was also drug packaging paraphernalia on the table. Second, the evidence allowed for a reasonable jury to find that Erkins knowingly possessed the drugs found at the bottom of the basement steps. When Detective Teelander approached the front door, Erkins jumped up yelling "police" and ran through the kitchen toward the basement steps. Teelander followed Erkins and found him lying on the basement steps. Teelander then found drugs and packaging paraphernalia at the bottom of the stairs, which had apparently been thrown there in a haphazard manner. A reasonable jury could have inferred that Erkins threw the drugs down the basement stairs. Further, the approximate value of the drugs was $3,400, matching the amount of money found on Magee, supporting the prosecution's claim that Erkins had either purchased the drugs from Magee or was intending to sell them to Magee.

Erkins told the police that he did not know who owned the house and did not know any of the people that were present. But this statement was contradicted by photographs of Erkins with others from the house, including Magee, that were found inside the vehicles that were searched.

In sum, the totality of the evidence was sufficient for a rational jury to find that Erkins constructively possessed the drugs underlying his convictions.

## B. CONFRONTATION CLAUSE/HEARSAY

Finally, Erkins argues that he was denied his constitutional right to confront witnesses by the admission of Magee's recorded jail calls and that the statements made in the call were inadmissible hearsay. We disagree on both counts.[15]

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI. "The right is implicated only for 'testimonial' evidence, because the

---

[15] We review de novo a claim that a defendant's constitutional right to confrontation was violated. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). The trial court's evidentiary decisions are reviewed for an abuse of discretion. *Burns*, 494 Mich at 110.

Confrontation Clause applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' " *People v Bruner*, 501 Mich 220, 227; 912 NW2d 51 (2018), quoting *Crawford v Washington*, 541 US 36, 51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Accordingly, "[t]he threshold question for any Confrontation Clause challenge . . . is whether the proffered evidence is testimonial." *Bruner*, 501 Mich at 227.

In *Crawford*, the U.S. Supreme Court declined to provide precise guidance to differentiate between testimonial and nontestimonial out-of-court statements, leaving "for another day any effort to spell out a comprehensive definition of 'testimonial.' " *Crawford*, 541 US at 68. But the Court noted that "a casual remark to an acquaintance" is not a testimonial statement in the way that an accuser making a formal statement to a police officer is. *Id*. at 51. The Supreme Court provided additional guidance in *Davis*, where it held that statements during a police interrogation are nontestimonial when made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006). In contrast, statements are testimonial when there is no ongoing emergency and "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. Relevant to this appeal, the *Davis* Court discussed some prior Supreme Court decisions where "the statements at issue were clearly nontestimonial." *Id*. at 825. Specifically, the Court noted *Bourjaily v United States,* 483 US 171, 181-184; 107 S Ct 2775; 97 L Ed 2d 144 (1987) (statements made by one co-conspirator to a an FBI informant), and *Dutton v Evans*, 400 US 74, 87-89; 91 S Ct 210; 27 L Ed 2d 213 (1970) (plurality opinion) (statements by one prisoner to another).

In light of *Crawford* and *Davis*, we conclude that Magee's voluntary telephone conversations from the jail were nontestimonial and not subject to the Confrontation Clause. The trial court admitted small portions of two recorded calls made by Magee: one to Erkins and one to a third party. Magee's statements were "nontestimonial because they were made informally to an acquaintance, not during a police interrogation or other formal proceeding, or under circumstances indicating that their primary purpose was to establish or prove past events potentially relevant to later criminal prosecution." *People v Taylor*, 482 Mich 368, 378; 759 NW2d 361 (2008). Nor is there any indication that Magee intended to bear witness against Erkins. Accordingly, Erkins's Confrontation Clause argument regarding the admission of the recorded conversations is without merit.

Because the Confrontation Clause is not applicable, "the admissibility of the statements in this case is governed solely by MRE 804(b)(3)." *Id*. at 378. MRE 804(b)(3) provides an exception to the general rule against hearsay when the declarant is unavailable as a witness[16] and the statement was against the declarant's interest:

> (3) *Statement against interest*. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so

---

[16] Defendants were unavailable as witnesses because they asserted their Fifth Amendment privilege to not testify. *People v Meredith*, 459 Mich 62, 66; 586 NW2d 538 (1998).

far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Erkins takes particular issue with Magee's statement, following a mention of "fat boy," that "you could've kept that in yo[ur] pocket and it would be one less charge, we'd of had separate charges." The prosecutor argued that "fat boy" referred to Erkins, and thus this statement subjected Magee to criminal liability because it demonstrated that he knew drugs were present at the time of the raid. Erkins does not argue otherwise, but instead maintains that this statement does not satisfy the criteria for reliability set forth in *People v Poole*, 444 Mich 151, 165; 506 NW2d 505 (1993), abrogated in part by *Taylor*, 482 Mich 368. However, the criteria on which Erkins relies applies only when evaluating testimonial statements under the Confrontation Clause. See *Taylor*, 482 Mich at 374. Because Magee's statements were nontestimonial and governed solely by MRE 804(b)(3), Erkins's reliance on *Poole* is misplaced.

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro