*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JERMAINE MARCEL AGEE,

      Defendant-Appellant.

UNPUBLISHED
June 13, 2024

No. 365843
Wayne Circuit Court
LC No. 22-001023-01-FH

Before: MURRAY, P.J., and RIORDAN and D. H. SAWYER*, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of possession with intent to deliver a controlled substance, MCL 333.7401(2)(a)(*iii*) (50 grams or more, but less than 450 grams), and one count of keeping or maintaining a drug house, MCL 333.7405(1)(d). We affirm.

## I. BACKGROUND

This case arises out of the Detroit Police Department's ("DPD's") continued surveillance and execution of a search warrant at a residential property. Multiple times during surveillance of the property, Officer Wallace Richards observed people drive up to the property and stay for only one minute. Defendant would exit, conduct "hand-to-hand" transactions without having long conversations, and return inside.[1] A few days before executing the search warrant, Richards observed the home for about 15 minutes and saw four people arrive simultaneously but separately enter the property, stay for less than one minute, and leave. A team of officers executed a search warrant, and when they entered the property they found defendant sitting with two other men,

---

[1] DPD officers referred to transactions defendant made at the property as "hand-to-hand" transactions, which they described as transactions where currency was physically exchanged for a tangible item.

---

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

whom the officers had never seen perform hand-to-hand transactions at the property, sitting in the living room. These two men resided at the property.

The officers seized four sandwich bags containing substances believed to be cocaine from the living room coffee table, but these substances were never tested and confirmed to be narcotics. Sandwich bags containing similar substances were found on the kitchen table, but were also never tested. Officers seized from a kitchen table a large silver scale and a small black and green scale containing a white residue. A black leather backpack was found on a chair at the kitchen table in front of where the scales were seized, and a DPD printable E-ticket with defendant's name, driver's license number, and date of birth was found inside the backpack.

Officers also recovered from the kitchen table knotted sandwich bags and a container with the bottom cut out and narcotics placed inside. The narcotics in the container were tested and identified as 70.37 grams of cocaine, and 184.51 grams of fentanyl. The parties stipulated to the weight of these seized narcotics at trial. Two firearms were seized from the second floor of the property. Small green Ziploc bags, which "were definitely for distribution," were also seized.

Finally, Sergeant Jeffrey Banks, who supervised collection of all evidence during the raid, testified a total of $10,619 in cash was seized at the property. From defendant's pants pocket $1,760 in cash was seized and comprised of smaller denominations, such as $1, $5, $10 and $20 bills. Officers also seized about $8,700 in cash from inside the backpack. The bills in the backpack were in larger denominations—mostly $20, $50, and $100 bills. Defendant was arrested at the scene because Richards identified defendant as the individual he saw conducting hand-to-hand transactions during surveillance of the property, and was the subject of the search warrant. The officers theorized the other men who resided at the property were allowing defendant to deal from the house in exchange for a free supply of narcotics, as this was a common practice among drug dealers and users.

Together, the DPD officers who searched the property had almost 40 years of experience in the Narcotics Enforcement Unit, and were trained to identify narcotics, materials used for packaging and distributing narcotics, and locations where narcotics would be stored and trafficked. The officers testified the cash found at the property was likely proceeds from narcotics sales, the Ziploc bags seized were likely used to package narcotics for individual sale, and the firearms were likely used to ward off theft of large amounts of cash or narcotics. And, despite not establishing whether defendant resided at the property, the officers explained it was typical for sellers to sell from others' homes or abandoned homes to keep law enforcement from finding them. According to the officers, it was rare for a seller to sell narcotics out of the same home they lived in.

After being convicted, defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 25 to 40 years' imprisonment for each count of possession with intent to deliver, to run concurrently, and time served for his conviction of keeping or maintaining a drug house. Defendant now appeals his convictions.

II. ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

Sufficiency-of-the-evidence arguments are reviewed de novo. *People v Osby*, 291 Mich App 412, 415; 804 NW2d 903 (2011). We view the evidence in the light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Alter*, 255 Mich App 194, 201-202; 659 NW2d 667 (2003). When an appellate court reviews the evidence supporting a conviction, factual conflicts are also to be viewed in a light favorable to the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted).

"In reviewing the sufficiency of the evidence, [we] must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Johnson*, 340 Mich App 531, 548; 986 NW2d 672 (2022) (quotation marks and citation omitted). "[We] must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). In addition, "conflicts in the evidence must be resolved in favor of the prosecution." *Id*. (quotation marks, citation, and alteration omitted). "Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime." *Johnson*, 340 Mich App at 548 (quotation marks and citation omitted).

1. MCL 333.7401(2)(a)(*iii*)

Defendant contends the evidence was insufficient to sustain his convictions because not all substances seized from the property were tested, and the prosecution never called an expert witness to testify about the contents of the recovered substances. He also argues the prosecution failed to establish a sufficient nexus between him and any controlled substances found at the property.

MCL 333.7401(1) and MCL 333.7401(2)(a)(*iii*) state:

(1) Except as authorized by this article, *a person shall not* manufacture, create, *deliver, or possess with intent to* manufacture, create, or *deliver a controlled substance*, a prescription form, or a counterfeit prescription form.

* * *

(2) A person who violates this section as to:

(a) A controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section [MCL 333.]7214(a)(*iv*)[2] and:

* * *

(*iii*) Which is in an amount of *50 grams or more, but less than 450 grams, of any mixture containing that substance* is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $250,000.00, or both. [Emphasis and footnote added.]

A conviction of possession with intent to deliver a controlled substance under MCL 333.7401(2)(a)(*iii*) requires the prosecution to prove four elements beyond a reasonable doubt: (1) the recovered substance is a controlled substance under MCL 333.7214; (2) the substance is in a mixture weighing more than 50 grams but less than 450 grams; (3) defendant was not authorized to possess the substance; and (4) defendant knowingly possessed the substance intending to deliver it. *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005).

The parties stipulated at trial to the results of the Michigan State Police laboratory report indicating 70.37 grams of cocaine and 184.51 grams of fentanyl were seized from the kitchen table at the property, so the first and second elements are not in dispute. Neither is the third element, because no evidence was presented defendant was authorized to possess such substances. The only element in dispute is the fourth element regarding knowing possession with intent to deliver. As discussed in *Wolfe*, 440 Mich at 519, knowing possession with intent to deliver has two components: (1) possession and (2) intent. "A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive." *Id*. at 519-520. When the officers raided the property, they did not find any drugs on defendant's person to conclude he actually possessed cocaine and fentanyl, requiring an analysis of constructive possession.

"[C]onstructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Wolfe*, 440 Mich at 521. Constructive possession may be joint, with more than one person possessing a controlled substance. *Id*. at 520. Though presence, by itself, at the location where drugs are found is insufficient to prove constructive possession, the evidence introduced at trial showed a connection between defendant and the cocaine and fentanyl to establish defendant constructively possessed them. *Id*. For example, officers seized over $10,000 in cash at the property, with $1,760 in smaller denominations being seized from defendant's person, and $8,700, in larger denominations, being seized from inside the backpack in the kitchen. The jury could reasonably infer that the backpack belonged to defendant because a DPD E-ticket with his name on it was found inside.

From their knowledge and experience as Narcotics Enforcement Unit officers, the officers believed the cash in smaller denominations found on defendant's person were proceeds from narcotics sales to individual buyers, and the larger sums of cash in the backpack were from "middleman" sales to other dealers to then resell to individuals. This, coupled with Richards

---

[2] MCL 333.7214 states fentanyl and cocaine are schedule 2 controlled substances.

seeing defendant make many hand-to-hand transactions that were short in duration during his surveillance of the property, established a sufficient nexus between defendant and the large quantity of cocaine and fentanyl seized at the property to support a conclusion defendant had constructive possession of the narcotics.[3]

Intent to deliver can be proved inferentially. *Wolfe*, 440 Mich at 524. "[A]ctual delivery of narcotics is not required to prove intent to deliver. Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding arrest." *Id*. Even though the smaller Ziploc bags allegedly containing heroin seized from the coffee table were never tested, it is reasonable to assume, on the basis of the officers' testimony about their appearance and presence in close proximity to the larger quantity of cocaine and fentanyl, they also contained narcotics. During surveillance, defendant was seen making short, hand-to-hand transactions. Because of the officers' observations before the raid, and the way the untested substances on the coffee table were packaged, it was reasonable to infer defendant intended to deliver these controlled substances. This conclusion is supported by the empty Ziploc bags found on the kitchen table, in addition to the large and small scales, which still had white residue on them requiring the wearing of gloves when handling. Further, from testimony by the officers that less than one gram of fentanyl can cause someone to overdose, it is reasonable to infer possession of 184.51 grams of fentanyl was not for individual consumption, but evidenced an intent to deliver.

When viewed in the light most favorable to the prosecution, the evidence was sufficient to support both convictions under MCL 222.7401(2)(a)(*iii*).

## 2. MCL 333.7405(1)(d)

Defendant next argues his conviction of keeping and maintaining a drug house should be vacated because the officers never saw what he was actually exchanging in the hand-to-hand transactions occurring outside the property. Further, no proof-of-residency documents were recovered during the search of the property, which defendant contended were critical to linking him to any illegal acts occurring at the property.

A rational trier of fact could find the testimony of the prosecution's witnesses to be credible and conclude the prosecution established beyond a reasonable doubt that defendant kept or maintained a drug house. MCL 333.7405(1)(d) states a person shall not:

> *Knowingly keep or maintain a* store, shop, warehouse, *dwelling*, building, vehicle, boat, aircraft, or other structure or place that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled

---

[3] See *People v Williams*, 268 Mich App 416, 422-423; 707 NW2d 624 (2005) (holding the packaging of marijuana in small plastic bags, and additional plastic bags seized from the property, suggested the defendant intended to break the marijuana into even smaller quantities for sale or distribution, evidencing an intent to distribute).

substances or *that is used for keeping or selling controlled substances in violation of this article*.  [Emphasis added.]

"[T]he terms 'keep' and 'maintain' are synonyms."  *People v Thompson*, 477 Mich 146, 153; 730 NW2d 708 (2007).  Both terms also "contain an element of 'continuity.' "  *Id*. at 154.  In other words, "[t]he phrase 'keep or maintain' implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence, such as perhaps a secret compartment or the like, that conduces to the same conclusion."  *Id*. at 155.  The *Thompson* Court concurred:

> The state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but such use must be a substantial purpose of the users of the property, and the use must be continuous to some degree; incidental use of the property for keeping or distributing drugs or a single, isolated occurrence of drug-related activity will not suffice.  The purpose [for] which a person uses property and whether such use is continuous are issues of fact to be decided on the totality of the evidence of each case; the state is not required to prove more than a single specific incident involving the keeping or distribution of drugs if other evidence of continuity exists.  [*Id*. at 156-157, quoting *Dawson v State*, 894 P2d 672, 678-679 (Alas App, 1995).]

Although Richards did not follow anyone who left the property to verify whether they purchased drugs from defendant, he observed multiple vehicles arrive at the property, people enter the house, leave after less than one minute, and drive away.  Before executing the search warrant, Richards also observed defendant at the property on multiple occasions, and defendant was the primary person observed making hand-to-hand transactions and not leaving for the duration of the surveillance.

When the officers raided the property, they found scales with white residue on them, empty and full plastic Ziploc bags, large amounts of cocaine and fentanyl consistent with an intent to distribute, large amounts of cash on defendant's person and in his backpack, and a container with a false bottom to place drugs.  While proof of where defendant resided was never produced, the officers learned the other two men detained during the raid resided at the property.  It was the officers determination, based on their observations, knowledge, and experience, that defendant was being allowed to use the residence as a drug house in exchange for a free supply of narcotics.

These facts, taken together and viewed in the light most favorable to the prosecution, are sufficient to sustain defendant's conviction of keeping or maintaining a drug house.

### B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Arguments asserting ineffective assistance of counsel are preserved by moving for a new trial or for a *Ginther*[4] hearing, *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014), or by filing a motion in this Court to remand to the trial court, *People v Abcumby-Blair*, 335 Mich

---

[4] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

App 210, 227; 966 NW2d 437 (2020). Defendant did not move for a new trial or for a *Ginther* hearing, or file a motion to remand in this Court, so the issue of whether his trial counsel was deficient is unpreserved. *Id*.

To preserve an argument regarding the admission or exclusion of evidence, a party must timely object or move to strike the admitted evidence on the record. MRE 103(a)(1). See also *People v Miller (After Remand)*, 211 Mich App 30, 42; 535 NW2d 518 (1995) (holding where the defendant did not object to opinion testimony at trial, the issue was not preserved for review). Defendant's counsel did not timely object or move to strike the officer's opinion testimony, rendering the evidentiary issue unpreserved. *Id*.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (quotation marks and citation omitted). "A trial court's findings of fact, if any, are reviewed for clear error, and [we] review[] the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010) (quotation marks and citation omitted). "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to mistakes apparent on the record." *Matuszak*, 263 Mich App at 48.

In addition, preserved evidentiary issues are reviewed for an abuse of discretion. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). Because defendant's arguments about the improper admission of opinion testimony were not properly preserved for appellate review, they are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings." *People v Swenor*, 336 Mich App 550, 564; 971 NW2d 33 (2021).

Defendant argues his most substantial defense would have been supported by an investigation into the other two men at the property. However, defense counsel did not question why officers did not arrest or further inquire about the two individuals. In addition, defendant asserts counsel was ineffective for failing to object to the opinion testimony by Banks.

Defense counsel was not ineffective for failing to investigate the two men detained with defendant at the property, and not objecting to Banks's testimony. The United States and Michigan Constitutions protect a defendant's right to a fair trial. US Const, Am VI; Const 1963, art 1, § 17. "This includes the right to the effective assistance of counsel." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). "Trial counsel is ineffective when counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. (quotation marks and citation omitted). "Trial counsel's performance is presumed to be effective, and defendant has the heavy burden of proving otherwise." *Id*. "To establish ineffective assistance of counsel, a defendant must show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *Id*. at 531-532 (quotation marks and citation omitted).

"If counsel's strategy is reasonable, then his or her performance was not deficient." *Isrow*, 339 Mich App at 532 (quotation marks and citation omitted). Prejudice is demonstrated when

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). We presume a defendant receives effective assistance of counsel and place a heavy burden on the defendant to prove otherwise. *People v Seals,* 285 Mich App 1, 17; 776 NW2d 314 (2009). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation . . . . [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004) (quotation marks and citation omitted; alterations in original). The fact that a trial strategy did not work does not constitute ineffective assistance of counsel. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

Contrary to defendant's assertions, his trial counsel *did* try to elicit testimony from the prosecution's witnesses about their understanding of who the other two men at the property were, their residence at the property, and the failure of officers to establish proof of residency for defendant. On redirect, the prosecution was able to refute any impression defense counsel's cross-examination left on the jury by eliciting testimony indicating the reason the officers did not arrest the other two men was because Richards identified defendant as the man he saw conducting hand-to-hand transactions during his surveillance, and was the subject of the search warrant.

Defense counsel's theory was the officers' failure to establish proof of residency from evidence obtained during the raid absolved defendant of guilt, but would have implicated the other two men residing at the property. This was a reasonable strategy considering proof of residency can contribute to a finding of guilt in keeping or maintaining a drug house, and could refute constructive possession. The prosecution's theory, supported by the officers' testimony, relied on how it is common for a drug dealer to sell from a drug user's residence in exchange for a free supply of drugs. Defense counsel made sure to question the officers about whether the two men confirmed this was the reason they allowed defendant to sell from their residence, and the officers admitted it was merely a theory based on their knowledge and experience. The jury found the prosecution's theory strong enough to overcome any reasonable doubt the defense attempted to establish with the proof-of-residency theory.

Defense counsel's investigation also could have been impeded by the motivation of the other two men to protect themselves from self-incrimination and invoke their Fifth Amendment right to remain silent, which the prosecution's witness, Robert Gibbs, elected to exercise on the second day of trial. US Const, Am V. Moreover, defense counsel's cross-examinations regarding whether defendant possessed any of the firearms seized during the raid were successful in creating sufficient reasonable doubt for the jury to acquit defendant of any firearm charges. Because of these circumstances, it cannot be said defense counsel was deficient, or that had he investigated the two men further, there is a reasonable probability the verdict would have been different. *Isrow*, 339 Mich App at 532.

Finally, defendant argues his counsel failed to object to Banks's testimony because Banks, although an experienced police officer, was a lay witness and not a chemist or doctor medically-trained to appropriately identify details about drug consumption. Defendant's argument requires application of MRE 701 and MRE 702, which govern the admissibility of opinion testimony. MRE

-8-

701 governs the admissibility of opinion testimony by lay witnesses, and states: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." MRE 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[5]

As recognized in *People v Dobek*, 274 Mich App 58, 77; 732 NW2d 546 (2007), the interplay between MRE 701 and MRE 702 when a police officer provides testimony based on their training and experience "is not entirely clear." In *Dobek*, the prosecutor offered the testimony of a police officer regarding the incidence of delayed disclosures in sexual assault cases "as simply a police officer giving lay testimony based on his training and experience without . . . being first qualified as an expert, while suggesting to the jury that [the officer] was an expert on the subject." *Id*. at 76. The trial court ruled the testimony was lay testimony and admissible under the rules of evidence. On appeal, this Court held the apparent conflict in caselaw "gives credence to a conclusion that the prosecutor did not pursue the challenged questioning in bad faith," and even assuming expert testimony was required, the officer "was more than qualified to give an expert opinion on delayed disclosure to the extent of the testimony actually presented." *Id*. at 79.

Specifically, the officer in *Dobek* "did not testify regarding the intricate psychological underpinnings of delayed disclosure, which would have required different expertise, but instead focused on its prevalence and commonsense reasons that would explain the behavior, such as threats or fear of getting into trouble." *Id.*, at 79 n 9. He instead "testified at length about his extensive knowledge, experience, training, and education concerning the sexual abuse of children," that he had personally investigated hundreds of criminal sexual conduct cases involving child victims, and received training in the investigation of cases involving delayed disclosure. The officer's background and experience informed his knowledge on delayed disclosures which, according to him, were common and happen frequently with child victims. *Id*. at 79.

*Dobek* is dispositive of whether Banks's testimony was admissible under MRE 701 and MRE 702. Banks, the raid commander, had been a sergeant in DPD's Narcotics Enforcement Unit for four or five years at the time of the raid and received training for identifying narcotics and substances for narcotics packaging material, and for cultivating informants and how to handle informants. He also received training in supervising a narcotics unit. His testimony about his knowledge and experience demonstrated that, although he was not an expert, he had *expertise* in narcotics enforcement. Banks had personally participated in executing many search warrants, and testified, based on his background and experience, that the amount of narcotics in the home was

---

[5] MRE 702 was amended effective May 1, 2024.

larger than what he normally would see, fentanyl was often used as a substitute for heroin, and less than one gram of fentanyl can cause overdose. On this record, the disputed testimony was admissible and the prosecutor acted in good faith in eliciting the testimony. Defendant's counsel cannot be ineffective for failing to make what would have been a meritless objection. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

Even if defense counsel erred in failing to object during Banks's testimony, any error arising from this testimony was harmless in light of the other evidence, which overwhelmingly established defendant possessed controlled substances with intent to distribute, and was maintaining a drug house.[6] Defendant was the only person observed engaging in hand-to-hand transactions outside the property, the lab report confirmed the amount and types of controlled substances seized from the property, scales and Ziploc bags were found throughout the property, and defendant was found with large amounts of cash on his person and in his backpack. On the basis of these facts, it cannot be said, had defense counsel objected to Banks's testimony, there is reasonable probability the verdict would have been different. *Isrow*, 339 Mich App at 532.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Riordan
/s/ David H. Sawyer

---

[6] See *People v Rodriguez*, 251 Mich App 10, 36-37; 650 NW2d 96 (2002) (holding any error arising from detective's expert testimony in drug conspiracy prosecution that the defendant's actions were consistent with those of a bodyguard was harmless in light of the nature and effect of other evidence that established the defendant conspired with accomplices to deliver cocaine); *People v Williams*, 240 Mich App 316, 320-322; 614 NW2d 647 (2000) (holding the erroneous admission of drug profile evidence, indicating that in the opinion of police witnesses, the defendant was using the codefendant's home as a "safe house," was harmless in prosecution for possession with intent to deliver cocaine, in view of evidence that defendant had a key to a safe containing cocaine in codefendant's house and had engaged in controlled buys at that house, and that crack cocaine was being manufactured at defendant's house).